756 So.2d 525 (2000)
STATE of Louisiana
v.
Jerome NORMAN.
No. 99-KA-600.
Court of Appeal of Louisiana, Fifth Circuit.
February 16, 2000.
*526 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Ellen S. Fantaci, Frank Brindisi, Assistant District Attorneys, *527 Gretna, Louisiana, Attorneys for Appellee.
Laurie A. White, New Orleans, Louisiana, Attorney for Appellant.
Panel composed of Judges MARION F. EDWARDS, CLARENCE E. McMANUS and SUSAN M. CHEHARDY.
EDWARDS, Judge.
Defendant/appellant Jerome Norman appeals the judgment of the trial court finding him guilty of distribution of cocaine in violation of LSA-R.S. 40:967A. Norman was one of three men allegedly involved in a drug transaction conducted by an undercover police officer. He was charged with selling three rocks of crack cocaine to the undercover officer. Norman alleges that his rights to counsel, fair trial and due process of law were violated when the trial court permitted him to waive his right to counsel and represent himself at trial. For the following reasons, the judgment of the trial court must be affirmed and remanded with instructions.
Norman was arrested on September 4, 1997 for distribution of cocaine in violation of LSA-R.S. 40:967A. On the day in question, Officer Dwight Dorsey, Jr. of the Gretna Police Department was working undercover to purchase illegal narcotics. He approached co-defendant Nelson Harrison and asked if he had any drugs. Harrison motioned for Norman to approach the undercover officer. The officer asked Norman for three rocks of crack cocaine. A third man, identified as James Chest, gave Norman the three rocks which Norman in turn sold to the undercover officer for fifty dollars ($50.00).
Officer Dorsey left with the rocks and had them tested by a field officer. They tested positive as cocaine. The officer had a videotape of the transaction and identified Jerome Norman as the person who sold him the drugs. Jerome Norman and Nelson Harrison were later arrested for the sale of the crack cocaine.
The matter was set for trial on October 14, 1998 before the Honorable M. Joseph Tiemann of the Twenty-Fourth Judicial District Court. Pre-trial motions were filed by Norman, one of which was to allow him to represent himself at trial. The motions were denied. A jury of twelve was empaneled, after which the trial judge chose to grant Norman's motion to substitute himself as counsel. While he was at first hesitant to allow Norman to represent himself, the trial judge stated that he was satisfied that Norman had an adequate understanding of the law and he should be allowed to represent himself and act as lead counsel with his court-appointed attorney acting as co-counsel to assist him.
On October 15, 1998, upon the completion of the trial on the merits, the jury returned a unanimous verdict of guilty as charged to the crime of distribution of cocaine in violation of LSA-R.S. 40:967A. The trial judge ordered a pre-sentencing investigation and set a sentencing date of December 9, 1998. At this time, the State noted its intention to file a multiple bill. Prior to sentencing, the State filed a habitual offender bill of information alleging that Norman was a third felony offender.
On December 9, 1998, the trial court sentenced Norman to ten (10) years at hard labor, with credit for time served. On January 20, 1999, the habitual offender proceeding was heard before the trial court. Once again, Norman was allowed to act in the capacity of lead counsel with his court-appointed attorney acting as co-counsel. The trial court found Norman guilty as a third felony offender and vacated the original sentence. The trial court sentenced Norman to life imprisonment, without benefit of probation, parole or suspension of sentence.[1] Norman filed a pro *528 se motion for appeal on that same date. The matter is now before this Court for review.

LAW AND ANALYSIS
Norman alleges four assignments of error on appeal. In his first assignment of error, Norman alleges that his constitutional rights to counsel, fair trial, and due process were violated when the trial court permitted him to waive his right to counsel and represent himself at trial. In his second assignment of error, Norman alleges that the trial judge erred when he improperly commented upon the evidence in the presence of the jury. In his third assignment of error, Norman alleges that the trial court erred when it allowed the prosecutor to make prejudicial comments during the State's rebuttal argument. In his fourth and final assignment of error, Norman alleges that there was insufficient evidence presented at the multiple bill hearing to justify finding him guilty as a third felony offender. These assignments of error are without merit and the judgment of the trial court must be affirmed.
In his first assignment of error, Norman alleges that he was denied his rights to counsel, fair trial, and due process of law when the trial court allowed him to waive his right to counsel and represent himself at trial. Norman alleges that he did not knowingly and intelligently waive his right to counsel, despite the fact that he re-urged his pro se motion to represent himself at trial on numerous occasions. He alleges that the trial court erred by allowing him to proceed by self-representation, effectively denying him adequate assistance of counsel. The accused in every instance has the right to defend himself and to have assistance of counsel.[2] The accused, in order to represent himself, must knowingly and intelligently waive the benefits associated with the right to counsel.[3]
The judge, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and the penalty range, should inquire into the accused's age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver.[4] Although Strain observed that "[f]actors bearing on the validity of the waiver include the age, education, experience, background, competency and conduct of the accused," the Supreme Court did not thereby establish inflexible criteria or a magic word formula for determining the voluntariness of a waiver.[5] The inquiry into the validity of the accused's waiver of counsel must take into account the totality of the circumstances in each case.[6]
The trial judge must determine whether the defendant's waiver of his right to be represented by counsel is intelligently and voluntarily made, and whether his assertion of his right to represent himself is clear and unequivocal.[7] In the absence of a waiver, a felony conviction is invalid if it was obtained in a court that denied the defendant the help of a lawyer.[8]
Norman filed motions asserting his right to self-representation and presented arguments on the motions. His assertion for self-representation was clear and unequivocal. The issue is whether Norman made a knowing, intelligent and voluntary waiver of his right to counsel.
*529 The trial court gave Norman many opportunities to retain his court-appointed counsel for trial, despite the fact that he continued to re-urge his motion to represent himself at trial. Finally, before any witnesses took the stand, the trial judge consented to allow Norman to represent himself at trial. In doing so, the trial judge again cautioned Norman that it would be better to have defense counsel represent him. The trial judge ascertained that Norman was intelligent and that he had an adequate knowledge of the law. These opinions were formulated after reading the various motions that Norman filed with the court and hearing Norman's arguments on these same pre-trial motions.
It must also be noted that Norman had been previously convicted of two felonies. In considering the waiver of the right to counsel, the Court should consider whether the record provides a basis for concluding that the defendant was aware of the dangers and disadvantages of self-representation.[9] In Gipson, the court held that the defendant, a second felony offender, had prior extensive experience with the judicial process and the criminal justice system, thereby being aware of the dangers and disadvantages of self-representation.[10] We conclude that Norman was aware of the dangers of self-representation and had knowledge of the criminal justice system because of his two prior felony convictions.
The record in this case reveals that the trial judge considered Norman's literacy, competency and volition before he appointed him as lead counsel, thereby accepting his waiver of the right to counsel. The judgment of the trial court must be affirmed.
In his second assignment of error, Norman alleges that the trial judge erred when he improperly commented upon the evidence in the presence of the jury. LSA-C.Cr.P. art. 772 states:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.
Specifically, Norman states that the trial judge violated LSA-C.Cr.P. art. 772 when he made comments during the examinations of Officer Dorsey and Sergeant Plaisance. Norman alleges that these comments improperly characterized the evidence and influenced the jury on the issue of his guilt or innocence.
Neither Norman nor defense counsel objected at trial to any alleged improper comments made by the trial judge. Under LSA-C.Cr.P. art. 841A, such failure to raise a contemporaneous objection waives the argument for appeal.[11] Nevertheless, on very rare occasions, the Louisiana Supreme Court has refused to apply the contemporaneous objection rule as a bar to review of an error which was so fundamental that it struck at the very essence of the reliability of the fact-finding process.[12] This Court has recognized an exception to the contemporaneous objection rule for alleged improper comments of a trial judge.[13]
In the present case, the trial judge made several comments during the testimonies of Officer Dorsey and Sergeant Plaisance in an attempt to clarify the information elicited from these witnesses by Norman. None of the comments made by the trial *530 judge could be viewed as an attempt to interpret the evidence. The trial judge did not offer his opinion on the evidence. He did however notify the jury as part of his jury instructions that "[i]f I have given anyone the impression that I have an opinion concerning the guilt or innocence of the Defendant, you are to disregard that impression."
Even assuming that the comments made by the judge were improper, it is well settled that a verdict will not be set aside because of improper remarks by the judge unless the reviewing court is thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict.[14] After a review of the record, it is the opinion of this Court that the comments in question did not influence the jury and did not contribute to the verdict. The comments in question were related to peripheral issues which did not contribute to the ultimate guilt or innocence of Norman. The judgment of the trial court must be affirmed.
In his third assignment of error, Norman alleges that the comments made by the prosecutor during closing arguments regarding Norman's self-representation constitute reversible error. Defense counsel objected to the prosecutor's characterization of Norman as an "overbearing, obsessive, controlling person" as well as comments implying that Norman's statements during closing arguments were tantamount to a confession of guilt. He moved for a mistrial, but the trial judge denied his motion and noted the objection for the record.
Norman alleges that the entirety of the prosecutor's comments during closing arguments refer to his failure to testify in his own defense. Norman also alleges that the prosecutor's rebuttal remarks were beyond the scope of his closing argument and were therefore improper.
A mistrial shall be ordered when the prosecutor refers directly or indirectly to the failure of the defendant to testify in his own defense.[15] An indirect reference requires mistrial only if the court determines that the comment was intended to draw the jury's attention to the failure to testify.[16] Since the objected-to comments do not directly refer to Norman's failure to testify, the pertinent inquiry is whether these remarks constitute an indirect reference to his failure to testify. The Court must then determine whether the comments were intended to draw the jury's attention to the failure to testify or if they merely constitute harmless error.
Harmless error occurs where the guilty verdict actually rendered in the trial was surely unattributable to the error.[17] The Louisiana Supreme Court has held that a violation of Article 770 is subject to a harmless error analysis with regard to Article 770(2), the prohibition relative to evidence of other crimes.[18] In so holding, the court explained that although Article 770 is couched in mandatory terms, it is a rule for trial procedure and is subject to harmless error review.[19]
Even assuming the comments were an indirect reference to Norman's failure to testify, any alleged error must be viewed as harmless since the guilty verdict could not be attributable to this error. There was overwhelming evidence of Norman's guilt. He suffered no prejudice from the implication that he was the person in the videotape since the jury viewed the videotape *531 and heard testimony from two eyewitnesses to the transaction who identified him. Moreover, the videotape shows a clear and unobstructed view of the three suspects involved in the drug transaction. The assignment of error is without merit and the judgment of the trial court must be affirmed.
In his fourth and final assignment of error, Norman alleges that there was insufficient evidence presented at the multiple bill proceeding to justify finding him guilty as a third felony offender. In a habitual offender proceeding, the State need only establish by competent evidence the prior felony conviction(s) and that defendant is the same person who was convicted of the prior felony(s).[20]
At the habitual offender proceeding on January 20, 1999, Norman refused to be fingerprinted. He stipulated that he was the same person who was present in court and fingerprinted on December 9, 1998. He also admitted that he was the same person who was sentenced in court on December 9, 1998.
Captain Merril Boling, an expert in the taking and analysis of latent fingerprints, testified at the hearing. He was shown State's Exhibit Number 1, in globo, the court record in the instant proceeding having case number 97-6753. The State directed his attention to the bill of information which contained a set of fingerprints labeled to be those of Norman. Before Boling came to court that day, he examined these fingerprints.
Boling was shown State's Exhibit Number 2, in globo, the court record in case number 91-1679. Boling identified Norman's fingerprints on the back of the bill of information in this proceeding. He matched the fingerprints in State's Exhibit I with those in State's Exhibit 2 and concluded the fingerprints were made by the same subject.
He was shown State's Exhibit Number 3, in globo, the court record in case number 94-966. Boling was shown the bill of information which contained a set of fingerprints. Boling stated he examined the fingerprints contained in Exhibit 3 and matched them to the other cases.
The State introduced into evidence the three exhibits, which were the entire court records of these proceedings. The State noted in particular the Boykin forms showing guilty pleas, the minute entries, and the sentencing forms for the prior convictions. Neither Norman nor defense counsel objected to the introduction of these exhibits.
Norman alleges that the State did not meet its burden of proving that he was the same person who committed the predicate offenses because it failed to introduce the arrest registers from the three cases. He also alleges that the State failed to introduce any evidence as to the date of the commission of the offenses in order to fall within the cleansing period.
The State did not need to introduce arrest registers to prove that Norman was the same person who committed the predicate offenses. Norman stipulated that the fingerprints taken on December 9, 1998 were his own. An expert witness testified that these fingerprints were the same as the fingerprints in the record of two prior felony cases. This evidence is sufficient to prove that Norman was the person who was convicted of all three felony offenses.
The State introduced the entire record of the three felony proceedings. The date of each of the offenses was listed in these records. This evidence is sufficient to prove that all three convictions fell within the ten (10) year cleansing period.
There was sufficient evidence presented in the record to adjudicate Norman a third felony offender. The judgment of the trial court must be affirmed.
The record was reviewed for errors patent.[21] *532 Four patent errors were found in the record, of which three must be corrected by the trial court.
The first patent error is a defective commitment. The commitment/minute entry for the underlying and original conviction states that Norman was found guilty of "40:967A F II SCHEDULE II DIST. OF A CDS: COCAINE." There is no statutory provision of "40:967A F II Schedule II." Norman was convicted of LSA-R.S. 40:967A. We order the trial court to amend the commitment to remove the incorrect reference, in conformity with the transcript.[22]
The second patent error is that of an illegally lenient sentence. In imposing the original sentence, the trial judge did not impose the mandatory restriction that the first five years of the sentence be served without benefit of parole, probation, or suspension of sentence in accordance with LSA-R.S. 40:967B. Although the sentence was illegally lenient, it was subsequently vacated when Norman was adjudicated a multiple offender. Additionally, the State did not object at the trial court nor raise the issue on appeal. Under these circumstances, the illegally lenient sentence is not subject to correction.[23]
The third patent error is the defective amended commitment. The amended commitment, which reflects the habitual offender adjudication, unlike the minute entry, contains the following discrepancies with the transcript: (1) it incorrectly states Norman entered a guilty plea; (2) it states that the charges on the multiple bill were resolved on February 1, 1999 instead of January 20, 1999; (3) it incorrectly provides that Norman was informed of the five-day delay for taking an appeal and the three-year delay for filing post conviction relief. Additionally, the commitment provides no information that Norman was adjudicated a third felony offender, and the basis for that adjudication. The commitment is inaccurate and incomplete. We order the trial court to amend the commitment to remove the incorrect references, in conformity with the transcript, and to provide the appropriate information regarding the multiple offender adjudication.[24]
The fourth and final patent error is that Norman was not advised of the prescriptive period for filing post conviction relief either at the original sentencing or at the multiple offender adjudication. LSA-C.Cr.P. art. 930.8 currently provides that a defendant has three years from the day the judgment becomes final in which to file an application for post conviction relief. Moreover, an amendment to article 930.8, effective on August 15, 1999, shortens that prescriptive period. See 1999 La. Acts 1262. The amended article provides, in pertinent part:
A. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, unless any of the following apply:
* * *
(3) The application would already be barred by the provisions of this Article, but the application is filed on or before October 1, 2001, and the date on which the application was filed is within three years after the judgment of conviction and sentence has become final.
*533 The application of the amended prescriptive period in Norman's case would not violate ex post facto prohibitions, as the article itself does not relate to an offense or its punishment.[25] We order the trial court to send written notice of the amended prescriptive period (along with notification of when the period begins to run) to Norman within ten days of the rendering of this opinion, then filing written proof in the record that he received said notice.[26]
In summary, it is the opinion of this Court that the trial court did not err in finding Norman guilty of distribution of cocaine in violation of LSA-R.S. 40:967A. The trial court did not err in adjudicating Norman a third felony offender and sentencing him to life imprisonment. The judgment of the trial court must be affirmed and remanded with instructions regarding three of the errors patent in the record.
AFFIRMED AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] Although the amended commitment recites that credit for time served was imposed, as the trial judge originally intended, the transcript reveals otherwise. The sentencing transcript controls. See State v. Lynch, 441 So.2d 732 (La.1983). Nevertheless, LSA-C.Cr.P. art. 880 is now self-operating. State v. Rainey, 98-436 (La.App. 5th Cir. 11/25/98), 722 So.2d 1097; writ denied, 98-3219 (La.5/7/99), 741 So.2d 28.
[2] LSA-C.Cr.P. art. 511.
[3] Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[4] State v. Strain, 585 So.2d 540 (La.1991).
[5] State v. Stevison, 97-3122 (La.10/30/98), 721 So.2d 843.
[6] Id. at 845.
[7] State v. Hegwood, 345 So.2d 1179 (La.1977).
[8] State v. Bernard, 326 So.2d 332 (La.1976).
[9] State v. Gipson, 514 So.2d 646 (La.App. 2nd Cir.1987); writ granted in part, judgment amended by 521 So.2d 1143 (La.1988).
[10] Id. at 650.
[11] State v. Ellwest Stereo Theatres, Inc., 412 So.2d 594 (La.1982).
[12] State v. Arvie, 505 So.2d 44 (La.1987).
[13] State v. Rochon, 98-717 (La.App. 5th Cir. 3/10/99), 733 So.2d 624.
[14] State v. Gallow, 338 So.2d 920 (La.1976).
[15] LSA-C.Cr.P. art. 770(3); State v. Hamilton, 92-1919 (La.9/5/96), 681 So.2d 1217; cert. denied, 520 U.S. 1216, 117 S.Ct. 1705, 137 L.Ed.2d 830 (1997).
[16] Id. at 1225.
[17] State v. Everidge, 96-2665 (La.12/2/97), 702 So.2d 680; See also LSA-C.Cr.P. art. 921.
[18] State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94; reconsideration denied, 94-1379 (La.4/8/96), 671 So.2d 332.
[19] Id. at 101.
[20] State v. Bernard, 366 So.2d 1294 (La.1978).
[21] LSA-C.Cr.P. art. 920; State v. Godejohn, 425 So.2d 750 (La.1983); State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
[22] See State v. Watts, 98-1073 (La.App. 5th Cir. 5/19/99), 735 So.2d 866.
[23] See State v. Fraser, 484 So.2d 122 (La. 1986); State v. Harrell, 98-671 (La.App. 5th Cir. 1/26/99), 727 So.2d 1231.
[24] See State v. Lynch, 441 So.2d 732 (La. 1983); Watts, supra at 875.
[25] See State ex rel. Glover v. State, 93-2330, 94-2101, 94-2197 (La.9/5/95), 660 So.2d 1189.
[26] State v. Stelly, 98-578 (La.App. 5th Cir. 12/16/98), 725 So.2d 562.