875 So.2d 842 (2004)
STATE of Louisiana
v.
Rod TORREGANO.
No. 03-KA-1335.
Court of Appeal of Louisiana, Fifth Circuit.
May 11, 2004.
*844 Milton P. Masinter, New Orleans, LA, for Appellant.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Appellate Counsel, Andrea F. Long, Counsel of Record on Appeal, Cameron M. Mary, Trial Counsel, William C. Credo, III, Assistant District Attorneys, Gretna, LA, for Appellee.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and SUSAN M. CHEHARDY.
JAMES L. CANNELLA, Judge.
The Defendant, Rod Torregano, appeals his conviction of one count of sexual battery on a juvenile under the age of fifteen, a violation of La.R.S. 14:43.1 and one count of aggravated oral sexual battery on a juvenile under the age of twelve, in violation of La.R.S. 14:43.4.[1] Both counts involved the Defendant's daughter. We affirm and remand.
Following the Defendant's indictment, he pled not guilty and filed several pre-trial motions. A hearing on the motions was set and continued numerous times. The record does not reflect that a ruling was rendered on any of the motions. On May 20, 2002, the Defendant proceeded to trial without objecting to the lack of rulings on his pre-trial motions.[2]
After a two-day trial, a unanimous six-person jury found the Defendant guilty as charged on both counts. He was subsequently sentenced to ten years imprisonment at hard labor on count one and twenty years on count two to run concurrently with each other.[3]
*845 K.T., the victim, lived in Marrero, Louisiana with her deaf mother, her father, (the Defendant), her younger sister and paternal grandmother from 1997 to 1999 when she was between the ages of six and eight years old. In 1999, her parents separated and in June of 1999, K.T. moved to Florida with her mother and sister to live with her maternal grandmother. While there, the Defendant began telephoning daily to speak with K.T. The child sometimes became upset when the Defendant called and did not want to come to the telephone. At some point, K.T.'s grandmother changed her phone number to a private number because the Defendant's calling "had gotten so bad." The Defendant later attempted to call K.T. through the telephone operator, but the operator would not let the call go through. K.T.'s grandmother thought it was important that K.T. have a relationship with her father, so she offered to take K.T. to a pay phone so she could talk to the Defendant. At that point, K.T. became hysterical and confessed to her maternal grandmother that she did not want to talk to him because he had been touching her.
K.T.'s grandmother summoned K.T.'s mother to the room and told her that the Defendant had molested K.T. K.T. then told her mother and maternal grandmother what had happened. The police were called and K.T. was interviewed by two women with child protective services. The Florida police subsequently forwarded information pertaining to the sexual abuse to the Jefferson Parish Sheriff's Office. The Defendant was arrested on November 18, 2001.
According to K.T., on several occasions from 1997 through June of 1999, the Defendant touched her on her chest and her privates, and forced her to touch his private part. The first incident happened in her parents' room when K.T. was six years old. The Defendant touched K.T. underneath her clothes with his hand and told her not to tell anyone. The next time, the Defendant made K.T. touch his private parts. He told her "to move it and something would come out." K.T. testified that something white came out. The Defendant again told K.T. not to tell anyone. On another occasion, K.T. woke up to find her shorts down and the Defendant touching her privates with his tongue. The Defendant also showed K.T. pictures of naked men and women in a magazine.
At trial, the Defendant presented the testimony of a neighbor to show that he was never alone with his daughter. The neighbor testified she went over to the Defendant and K.T.'s home in Marrero every other day and never recalled a time when the Defendant and K.T. were alone.
On appeal, the Defendant asserts first that the trial judge erred in qualifying Dr. Scott Benton as an expert in the phenomenon of delayed disclosure. Second, he asserts that the conviction should be vacated because the prosecutor violated his constitutional right to compulsory process and to present a defense.

EXPERT TESTIMONY
The Defendant first argues that the trial judge erred in accepting Dr. Scott Benton as an expert in delayed disclosure because he had not interviewed the victim and there was no inquiry into the Daubert[4] *846 criteria. The Defendant further contends that Dr. Benton's testimony was improperly used to bolster the victim's credibility.
The State responds that these arguments are new grounds for the objection to the testimony that were not raised at the trial. The State contends that the Defendant objected at trial to Dr. Benton as an expert in the area of delayed disclosures solely on the basis of his qualifications or lack thereof. The State asserts that the Defendant never objected to the admissibility under Daubert of expert testimony relating to delayed disclosure.
To preserve the right to appellate review of an alleged trial court error, a party must state a contemporaneous objection with the occurrence of the alleged error as well as the grounds for the objection. La.C.Cr.P. art. 841(A); State v. Enclard, 03-283, p. 11 (La.App. 5th Cir.6/19/03), 850 So.2d 845, 853. The purpose behind the contemporaneous objection rule is to put the trial court on notice of an alleged irregularity so that it may cure the problem. It is also intended to prevent the Defendant from gambling for a favorable verdict and then resorting to appeal on errors that might have easily been corrected by an objection. Enclard, 03-283 at 11, 850 So.2d at 853. A new basis for an objection may not be raised for the first time on appeal. Id.[5] See also, State v. Winfrey, 97-427 (La.App. 5th Cir.10/28/97), 703 So.2d 63, 77, writ denied, 98-264 (La.6/19/98), 719 So.2d 481.[6]
After questioning Dr. Benton regarding his educational background and experience, the State offered him as an expert in pediatric forensic medicine capable of giving an opinion with regard to delayed disclosure, sexual assault, and sexual abuse. Defense counsel cross-examined Dr. Benton on his qualifications and expertise and specifically objected to Dr. Benton's qualifications on delayed response. Defense counsel stated:
I have no further questions, Your Honor, but I would object to his qualification on delayed response, Your Honor. That is not his role. He's not a psychiatrist. He's not a counselor. He'swhat he does is talk to the child regarding what the child says happens, with the idea

*847 ....
With the idea is, how does that then flow over into the examination. That is his focus. And for that reason, I don't think he can be an expert in delayed response, Your Honor.
The State then specifically inquired into Dr. Benton's experience with delayed disclosure which established that Dr. Benton was very familiar with the phenomenon in child sexual abuse cases, both through literature and his nine years of experience in examining approximately 1,000 children a year. The trial judge then accepted Dr. Benton as an expert in the field of pediatric forensic medicine competent to testify regarding delayed disclosure, sexual assault, and sexual abuse in children.
At trial, the Defendant never challenged the reliability or admissibility of testimony relating to the theory of delayed disclosure. Rather, he only objected to the qualifications of Dr. Benton to testify about delayed disclosure.[7] Thus, the only issue properly before this Court is whether Dr. Benton was qualified to testify regarding delayed disclosure.[8]
The trial court is vested with wide discretion in determining the competence of an expert witness and its ruling on the qualification of the witness will not be disturbed absent an abuse of discretion. State v. Craig, 95-2499, p. 9 (La.5/20/97), 699 So.2d 865, 870, cert. denied, 522 U.S. 935, 118 S.Ct. 343, 139 L.Ed.2d 266 (1997). See also, State v. Qutoum, 02-780, p. 7 (La.App. 5th Cir.1/28/03), 839 So.2d 323, 327, writ denied, 03-595 (La.5/30/03), 845 So.2d 1059, citing State v. Craig. In reviewing the decision of the trial court to qualify a witness as an expert, the appellate courts will also consider whether a witness has previously been qualified as an expert. Craig, 95-2499 at 9, 699 So.2d at 870.
According to the record, Dr. Benton is the director of pediatric forensic medicine for the children at risk evaluation center at Children's Hospital. He testified that he started working at Children's Hospital in 1992 as a medical resident and has continued to work there as a physician since 1995. He attended Louisiana State University (LSU) medical school and is a clinical associate professor at both LSU and Tulane Schools of Medicine. Dr. Benton is the Fellowship Director for Pediatric Forensic Medicine for the LSU Pediatric Department. Dr. Benton attends several continuing medical training conferences at the national, state and local level that pertain to the evaluation of children who are suspected of being abused and/or neglected. He has written several research papers, two of which are in print and three of which are in publication.
Dr. Benton testified that he is very familiar with the phenomenon of delayed disclosure in child sexual abuse cases. He explained that he has become familiar with delayed disclosure through his experience of examining approximately 1,000 children a year and by characterizing the information he obtains from them as to when the last act of abuse occurred and when the child told someone about the abuse. Dr. Benton also stated the literature on delayed *848 disclosure is very clear. He further stated that he had been qualified in the past by a court of law as an expert in the area of delayed disclosure in sexual abuse of children.
The Defendant has failed to show how Dr. Benton's qualifications were so lacking that he should not have been qualified as an expert in this area. The fact that Dr. Benton did not personally examine the victim in this case does not impact his expertise. Thus, considering Dr. Benton's education and experience, we find that the trial judge did not abuse her broad discretion in finding Dr. Benton competent to testify in the area of delayed disclosure.

THE RIGHT TO COMPULSORY PROCESS
The Defendant argues that his conviction should be vacated because the prosecutor violated his right to compulsory process and to present a defense, under both the state and federal constitutions. The Defendant contends that he intended to call his mother to testify on his behalf, but did not because the prosecutor threatened to arrest his mother and charge her as a principal in violating a protective order if she testified. The Defendant maintains that his mother's testimony was material because she lived in the same household where the alleged abuse occurred and could contradict the claims that the victim was left alone with him and that the victim feared him. The Defendant asserts that, as a result of the threat, he was forced to call his neighbor, a less powerful witness.
The State contends that the Defendant failed to preserve this issue for appeal because he failed to object to the prosecutor's actions at the trial and failed to proffer his mother's testimony for review by this Court. The State further asserts that the Defendant failed to demonstrate prejudice, as there is no evidence that his mother refused to testify as a result of the prosecutor's statement.
After the State rested, the Defendant's counsel indicated that he would call the Defendant's mother to the stand. The prosecutor approached the bench with defense counsel and stated that the Defendant's mother had helped the Defendant violate a protective order issued to protect the victim and her sister and mother. The prosecutor advised that, if the mother testified, he would inquire into the violation of the protective order during cross-examination and that she would be charged with violating the protective order, or with perjury if she failed to answer truthfully. He further stated that he wanted to let defense counsel know what was coming. After the prosecutor explained the situation regarding the Defendant's mother and stated what would happen if she testified, defense counsel inquired into the basis of the prosecutor's knowledge relating to the witness's actions in connection with the protective order. The prosecutor answered defense counsel's questions after which defense counsel simply stated, "All right. Give me a minute, Judge, please." Thereafter, an unrelated discussion about jury charges was held. Defense counsel then called his first and only witness, Oneida Ballet. At no time did the Defendant object or voice any concern regarding his inability to present a defense in light of the prosecutor's statements pertaining to his mother.
In this case, the Defendant failed to object to the prosecutor's alleged threat to arrest his mother if she testified and, under the contemporaneous objection rule, the Defendant waived the objection. See: La.C.Cr.P. art. 841(A); Enclard, 03-283 at 11, 850 So.2d at 853. However, we note that, on very rare occasions, the courts have refused to apply the contemporaneous objection rule as a bar to review an *849 error which was so fundamental that it struck at the very essence of the reliability of the fact-finding process. See: State v. Arvie, 505 So.2d 44 (La.1987); State v. Norman, 99-600, pgs. 7-8 (La.App. 5th Cir.2/16/00), 756 So.2d 525, 529, writ denied, 00-971 (La.3/23/01), 787 So.2d 1007. We find that this evidence does not meet that criteria.
In Arvie, the court found that the circumstances of the case did not warrant making an exception to the contemporaneous objection rule where the defendant sought appellate review of the prosecutor's use of his post-arrest silence for impeachment purposes and had not objected to the prosecutors questions that elicited the information. The court acknowledged that there are exceptions to the rule, as in State v. Williamson, 389 So.2d 1328 (La. 1980) and State v. Green, 493 So.2d 588 (La.1986). In Williamson, the court addressed the issue despite the lack of objection, when the jury was improperly charged with the wrong definition of the charged crime. The Supreme Court reasoned that, "a substantial error in the very definition of the charged crime was of such importance and significance as to violate the fundamental requirements of due process." Arvie, 505 So.2d at 47. In Green, the court refused to apply the contemporaneous objection rule because there was an omission in a fundamental jury instruction. Another exception was recognized by this court in Norman. There, the defendant alleged that the trial judge made improper comments on the evidence in front of the jury. Norman, 99-600 at 8, 756 So.2d at 529. Although we recognized that a judge's improper comments can be an exception to the contemporaneous rule, we further found that the judge's comments in that case were not comments on the evidence, and did not contribute to the guilty verdict.
Here, the facts do not warrant an exception to the contemporaneous objection rule. Although we note that the prosecutor's threat may be perceived to have had a chilling effect on the defense's right to call a witness, the right to call a witness is not unlimited. The Defendant must show that the testimony would be relevant, vital and favorable to the defense. See: Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967); United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982); Roussell v. Jeane, 842 F.2d 1512, 1516 (5th Cir.1988). Furthermore, there is no Sixth Amendment right to a witness who cannot aid the defense. Ashley v. Wainwright, 639 F.2d 258, 261 (5th Cir.1981).
Here, the error complained of cannot be considered "so fundamental that it struck at the very essence of the reliability of the fact-finding process." Norman, 99-600 at 8-9, 756 So.2d at 529. Although the Defendant claims that his mother's testimony was material because she lived at the home and could have contradicted the claims that the victim was afraid of him and that the Defendant and the victim were left alone together, the substance of the proposed witness's testimony is unknown because it was not proffered. In addition, the victim testified that she was not afraid of the Defendant. So the testimony would not be relevant for that purpose. Finally, it is implausible that the Defendant's mother could have testified that the Defendant, the child's father, was never home alone with the child during the two-year period when the abuse occurred. Thus, we find that the Defendant is not entitled to a reversal of his conviction on this basis.

ERROR PATENT
We have reviewed the record for patent errors in accordance with La.C.Cr.P. art. 920. See: State v. Oliveaux, 312 So.2d 337 *850 (La.1975); State v. Perrilloux, 99-1314 (La.App. 5th Cir.5/17/00), 762 So.2d 198. We find two errors requiring action.
First, there is no indication in the record that the trial judge gave the Defendant notice of the registration requirements for sex offenders, as required by La.R.S. 15:543(A). La.R.S. 15:542 requires that all persons convicted of a sex offense must register with the sheriff of the parish where the person resides. La. R.S. 15:543(A) requires the trial judge to provide written notification of the registration requirements to the Defendant upon judgment and sentencing. This Court has recognized the failure of the trial court to give the notice as an error patent. See: State v. Stevenson, 00-1296, p. 4 (La.App. 5th Cir.1/30/01), 778 So.2d 1165, 1166-1167. In Stevenson, we remanded the matter with an order to the trial judge to inform the defendant of the registration requirements of La.R.S. 15:542 by sending written notification to the defendant within ten days of the opinion and to file written proof in the record that the defendant received such notice. Accordingly, we will remand this case with the same order.
Second, the record does not show that the Defendant was advised of the two-year prescriptive period for filing an application for post-conviction relief, pursuant to La.C.Cr.P. art. 930.8. Thus, in conformity with our policy, we will also order the trial judge to advise the Defendant of the two-year prescriptive period by sending written notice to the Defendant within ten days after the rendition of this opinion and to file written proof in the record that the Defendant received such notice. See: State v. Esteen, 01-879, p. 28 (La.App. 5th Cir.5/15/02), 821 So.2d 60, 78.[9]
Accordingly, the Defendant's convictions and sentences are hereby affirmed. The case is remanded for the trial judge to send written notice to the Defendant of the prescriptive period for filing an application for post-conviction relief, along with a notice of when the period begins to run, and further for the trial judge to send written notice to the Defendant of the sexual offender registration requirements of La. R.S. 15:542. Both notices are to be sent within ten days of this opinion and written proof is to be filed in the record that the Defendant received such notices.
CONVICTIONS AND SENTENCES AFFIRMED; CASE REMANDED FOR NOTICE OF POST-CONVICTION PRESCRIPTION AND FOR NOTICE OF SEX OFFENDER REGISTRATION REQUIREMENTS.
NOTES
[1] La.R.S. 14:43.4 was repealed by Acts 2001, No. 301, § 2. Under La.R.S. 24:171, unless the act that repeals a criminal statute provides otherwise, the offense is not extinguished for those who violate it before its repeal. Because there is no language in Acts 2001, No. 301, § 2 which provides for the extinguishment of La.R.S. 14:43.4, the Defendant was properly charged with the offense. See also: State v. Weaver, 01-467 (La.1/15/02), 805 So.2d 166, 170, holding that a defendant is to be tried under the statute in effect at the time the offense is committed.
[2] A defendant waives all pending motions by proceeding to trial without raising the issue that his pre-trial motions were neither heard nor ruled upon. See, State v. Fletcher, 02-707 (La.App. 5th Cir.12/30/02), 836 So.2d 557, 559, writ denied, 03-409 (La.10/10/03), 855 So.2d 334.
[3] The State filed a habitual offender bill of information alleging the Defendant to be a second felony offender based on his conviction on count two and a 1999 conviction for simple burglary. The State also filed a habitual offender bill of information based on count one, but later dismissed it. The habitual offender proceedings are not contained in this record.
[4] In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-594, 113 S.Ct. 2786, 2796-2797, 125 L.Ed.2d 469 (1993), the United States Supreme Court set forth the following factors to be considered in determining the reliability and, therefore admissibility, of expert testimony: 1) whether the theory or technique has been subjected to peer review and/or publication, 2) the known or potential rate of error, 3) the testability of the theory or technique, and 4) whether the methodology is generally accepted in the scientific community. This standard was subsequently adopted by the Louisiana Supreme Court in State v. Foret, 93-246 (La.11/30/93), 628 So.2d 1116, as a guide to determining the admissibility of expert testimony under La.C.E. art. 702. The Daubert factors are designed to "assist the trial courts in their preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can properly be applied to the facts at issue." Daubert, 509 U.S. at 592-593, 113 S.Ct. at 2796; State v. Chauvin, 02-1188 (La.5/20/03), 846 So.2d 697, 701.
[5] In Enclard, the defendant raised the issue on appeal that the admission of certain crime scene photographs was prejudicial. However, at trial, the defendant only objected to the admission of the photographs on the basis he had not been allowed to view the crime scene. This Court addressed the issue of the admissibility of the photographs on the basis of the objection raised at trial which was that the defendant had not been allowed to view the scene.
[6] In Winfrey, the defendant argued on appeal that the trial court had allowed the prosecutor to go beyond the scope of cross-examination on redirect. He also argued on appeal that the testimony was based on inadmissible hearsay. This Court found that the defendant had not raised the issue of redirect testimony exceeding the scope of cross-examination at trial but only argued the testimony was based on hearsay. Accordingly, this Court limited its analysis to the issue of hearsay.
[7] Recently in Cheairs v. State DOTD, 03-0680 (La.12/3/03), 861 So.2d 536, 541-542, the Louisiana Supreme Court recognized a distinction between challenging the reliability of the methodology used by the expert, which is addressed by a Daubert inquiry, and the qualifications of the expert to testify competently regarding the matters he intends to address.
[8] It is noted that the Defendant is not precluded from challenging the admissibility of Dr. Benton's testimony relating to delayed disclosure as the issue may be raised through an application for post-conviction relief.
[9] The trial judge also erred in failing to specify that the sentences were to be served without benefit of parole, probation or suspension, as required by La.R.S. 14:43.1 and 14:34.4. However, we need not correct this error because of the self-activating provisions of La. R.S. 15:301.1(A), which will cause the Defendant's sentences to be served without benefits regardless of the omission by the trial judge.