pCHE HARDY, Judge
Nathaniel Washington appeals his conviction of being a convicted felon in possession of a firearm, a violation of La. R.S. 14:95.1. We affirm the conviction and sentence, but remand for correction of a patent error.
The bill of information, filed on August 18, 1999, alleged that on or about June 15, 1999 defendant was in possession of a firearm, to wit: a handgun, having been previously convicted of aggravated battery, in violation of La. R.S. 14:34, and armed robbery, in violation of La. R.S. 14:64. Defendant was arraigned and pleaded not guilty on August 19, 1999. He filed a motion to suppress evidence, which was denied on November 4,1999. He sought supervisory review of the ruling from this Court, but his writ application was denied. State v. Washington, 99-K-1284 (La.App. 5 Cir. 12/10/99).
On April 5, 2000, the case was tried before a 12-person jury, 11 of whom found defendant guilty as charged. On April 27, 2000 defendant argued a motion for new trial, which was denied. Defendant waived sentencing delays and was sentenced to the | ¡¡mandatory term of imprisonment at hard labor for ten years without benefit of parole, probation or suspension of sentence. Following sentencing defendant filed a motion for appeal, which was granted.
ANDERS APPEAL
Defense counsel has filed a brief pursuant to the procedure approved by the United States Supreme Court in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). In Smith v. Robbins, 528 U.S. 259, 120 S.Ct. 746, 759, 145 L.Ed.2d 756 (2000), the United States Supreme Court recently held that “the An-ders procedure is merely one method of satisfying the requirements of the Constitution for indigent criminal appeals.” In Smith, the court held that California’s procedure, enunciated in People v. Wende, 25 Cal.3d 436, 441-442, 158 Cal.Rptr. 839, 600 P.2d 1071, 1974-1075 (1979), was not unconstitutional merely because it diverged from the Anders procedure. 120 S.Ct. at 759.
The Anders procedure used in Louisiana was discussed in State v. Benjamin, 573 So.2d 528, 529-530 (La.App. 4 Cir.1990), approved by the Louisiana Supreme Court in State ex rel. Hawkins v. Criminal Dist. Court, 92-3200 (La.11/30/93), 629 So.2d 421, 421, adopted for use in this Circuit in State v. Bradford, 95-929 (La.App. 5 Cir. 6/25/96), 676 So.2d 1108, 1110, and expanded by the Louisiana Supreme Court in State v. Jyles, 96-2669 (La.12/12/97), 704 So.2d 241, 242.
*641 To comply with Jyles, appellate counsel not only must review the procedural history of the case and the evidence presented at trial, but also the appellate counsel’s brief must contain “a detailed and reviewable assessment for both the defendant and the appellate court of whether the appeal is worth pursuing in the first place.” Jyles, supra, at 242 (quoting State v. Mouton, 95-0981 (La.4/28/95), 653 So.2d 1176, 1177).
^Defendant's appellate counsel has asserted that, after a detailed review of the record, he could find no non-frivolous issues to raise on appeal and he has filed a Motion to Withdraw as counsel, which states that he informed defendant by letter and advised defendant of his right to file a supplemental brief.
In addition, this Court sent defendant a letter by certified mail, informing him that an Anders brief had been filed and granting him until October 29, 2000 to file a supplemental brief. Defendant has not filed a supplemental brief.
The Jyles court held it insufficient for defense counsel to make a mere “naked” statement that there were no non-frivolous issues, as follows:
Counsel must demonstrate to the appellate court by full discussion and analysis that he has cast an advocate’s eye over the trial record and considered whether any ruling made by the trial court, subject to the contemporaneous objection rule, had a significant, adverse impact on shaping the evidence presented to the jury for its consideration.... Independent review of the record by the appellate court, or the opportunity of the defendant to file his own brief, while providing important and necessary safeguards, cannot substitute for the essential equal protection requirement that appointed counsel representing an indigent defendant “act in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae.” [Citations omitted.]
State v. Jyles, 96-2669, pp. 2, 3 (La.12/12/97), 704 So.2d 241, 242.
Here, defense counsel asserts he “has thoroughly reviewed the record herein for the purpose of uncovering non-frivolous issues which might support the appeal,” but has found none. In particular, he argues that the denial of appellant’s motion in limine seeking to restrict the State to proof of one felony conviction was proper and that the trial court’s denial of the motion to suppress was proper. He further requests that this Court conduct a patent error review.
The State asserts that there are no discoverable patent errors.
|¡;This Court has made a full examination of all the proceedings, consisting of the following: (1) review of the bill of information to insure that defendant was properly charged; (2) review of all minute entries to insure that defendant was present at all crucial stages of the proceedings and that the conviction and sentence are legal; (3) review of all the pleadings in the record; and (4) review of all the transcripts to determine if any ruling provides an arguable basis for appeal.
After an independent review of the record and of appellate counsel’s brief, it appears that with the exception of a full error patent review, appellate counsel has adequately reviewed the procedural history of the case, has thoroughly discussed the constitutional adequacy of the plea, and provided “a detailed and reviewable assessment for both defendant and the appellate court of whether the appeal is worth pursuing in the first place,” as required by the Louisiana Supreme Court in Jyles. See also, State v. Mouton, 95-0981 (4/28/95), 653 So.2d 1176, 1177.
*642 Defense counsel’s Anders brief addresses two matters:
(1) The denial of appellant’s motion in limine seeking to restrict the state to proof of one felony conviction;
(2) The trial court’s denial of the motion to suppress.
Our review establishes that neither issue arguably supports an appeal. In the interest of justice, however, we discuss the evidence and law on these issues at length below.
FACTS
At the hearing on the motion to suppress, the following testimony was elicited: Officer Chad Guidry of the Gretna Police Department testified that while on night patrol on June 15, 1999, he received a dispatch that an anonymous caller saw “an | (¡unknown amount of black males at the location of Twenty-Second and Rose Drive, either burglarizing the house or removing property from outside the house.” The anonymous caller observed the men loading the property into a black Ford Ranger truck. The caller further stated that the truck was now located at Twenty-Second and Weyer Streets.
When Guidry arrived at the corner of Twenty-Second and Rose Drive, he noticed a house on the corner with an open window in the rear. He said it looked like an air conditioning unit had recently been removed from the window. He proceeded to the corner of Twenty-Second and Weyer Streets, where he saw a black Ford Ranger truck parked at 2214 Huey P. Long Drive. Officer Guidry testified that he knocked on the door to Apartment 12 and requested the occupants to come outside to talk with him. He indicated that, from the doorway, he saw an air conditioning unit on the floor of the apartment. He spoke with a young woman, later identified as Michelle Gray, who said that her boyfriend and another man bought the air conditioner for $10.00 from someone at a house at the corner of Twenty-Second and Rose.
The young woman said the two men bought the air conditioner from a man named “Nathaniel” who lived at 2135 Weyer Street. Officer Guidry interviewed Melvin Pauly (a/k/a Joseph Jones) in connection with the investigation. He said that Pauly, also a suspect in the investigation, told him that Nathaniel had a silver gun which he said he was going to use “to hit something.”
When Guidry and his partner arrived at 2135 Weyer Street, they knocked on the door, which was answered by a woman who appeared to be in her thirties. Officer Guidry testified that he was under the impression that the woman who answered the door was a resident of the home because he frequently patrolled the area and she was 17“always at the house.” He asked to speak with Nathaniel and the woman allowed the officers into the house.
Officer Guidry testified that he entered the small single shotgun house and walked into the second room, where he saw defendant on the couch. Guidry stated that as he entered the room, he saw defendant “shove something under the seat cushion of the couch.” He asked the man to identify himself, and the man stated that he was Nathaniel Washington. Officer Gui-dry also asked the man if he had any knowledge of the incident involving the air conditioner and received no answer. At that point, based on his knowledge that the man on the sofa was Nathaniel Washington and information that he was armed with a gun earlier, Officer Guidry arrested defendant and advised him of his rights. After defendant was arrested, the officer searched under the sofa cushion and found *643 a Phoenix Arms .25 caliber semiautomatic hand gun.
In his oral reasons for denying the motion to suppress, the trial judge stated,
The court is of the opinion that it was a good search. I am going to deny the motion to suppress. I think the officer acted appropriately under the circumstances and that pursuing the gun under the couch was appropriate under the circumstances. And, as I say, I am going to deny the motion.
As noted above, defendant’s writ application regarding the denial of the motion to suppress was denied.
Defendant also filed a pre-trial motion in limine to exclude any reference at trial to the fact that Officer Guidry was looking for defendant in connection with an investigation into a theft/burglary of an air conditioner. The court granted the motion and instructed counsel to prepare a stipulation to read to the jury.
At the beginning of trial, the State and the defendant entered into the following stipulation: “During the course of a proper and legal investigation, Gretna Police | sOfficer Guidry, had the occasion to arrive at 2135 Weyer Street, Gretna, in an effort to interview the defendant, Nathaniel Washington.”
The first witness at trial was Sergeant Virgil McKenzie, a fingerprint expert with the Jefferson Parish Sheriffs Office. McKenzie testified that he had taken defendant’s fingerprints in court prior to the trial. He identified the print card with defendant’s right-hand fingerprints, which was admitted as State’s Exhibit 1.
The State next introduced State’s Exhibit 2, comprising a bill of information, Boykin form, minute entry, and commitment form in case number 86-846, 24th Judicial District Court, which involved a charge of armed robbery against Nathaniel' Washington occurring on March 26, 1986. McKenzie testified that the fingerprints on State’s Exhibit 1 matched the fingerprints on the back of the bill of information in State’s Exhibit 2.
The State next introduced State’s Exhibits 3 and 3A, copies of a Jefferson Parish Sheriffs Office arrest register entry of the January 12, 1992 arrest of Nathaniel Washington for two counts of aggravated battery against Harold Smith and Andrew Coston. McKenzie stated that the fingerprints on State’s Exhibit 1 matched the fingerprints on page 2 of State’s Exhibit 3.
The State then introduced State’s Exhibit 4, comprising a Louisiana Department of Corrections (D.O.C.) diminution of sentence form, a D.O.C. Master Prison Record, a hard labor commitment, a sentencing form, a bill of information, and a Docket Master form in case number 86-846, 24th Judicial District Court. McKenzie testified that the fingerprints on State’s Exhibit 1 matched the fingerprints on State’s Exhibit 4.
Finally, the State introduced State’s Exhibit 5, a bill of information in 24th Judicial District Court case number 92-571 charging Nathaniel Washington with two Ucounts of aggravated battery against Andrew Coston and Harold Smith, as well as a Boykin form and a hard labor plea sentencing form in that ease.
Officer Guidry then testified at trial that on June 15, 1999, he went to a house located at 2135 Weyer Street to interview a man named “Nathaniel.” When he got there, he knocked on the door and was greeted by a female subject. Guidry asked her if Nathaniel was there and she said yes. Guidry asked if he could speak to him and she allowed Guidry into her residence. When he went inside, Guidry did not see anyone. Guidry proceeded into the next room and observed a black *644 male sitting on the sofa. The black male was the only person other than Guidry in the room.
As soon as Guidry entered the room, he observed defendant quickly shove something under the seat cushion of the couch. Guidry asked defendant to stand up. When Guidry checked under the sofa cushion, he found a loaded Phoenix Arms .25 caliber semi-automatic handgun. There was nothing else under the cushion.
Guidry ran a name check on defendant that revealed he had prior convictions as a felon. The officer arrested defendant and placed him in a marked unit.
MOTION IN LIMINE
Defendant was charged with being a convicted felon in possession of a firearm, a violation of La. R.S. 14:95.1. He made a motion in limine prior to trial seeking to limit the State’s proof to one felony conviction. Defendant argued that proof of more than one felony conviction was unduly prejudicial. The court suggested that defendant stipulate to having at least one previous conviction in order to avoid prejudicing his case; however, defendant refused.
|inThe State argued that it had the right to prove multiple prior convictions in order to ensure that it reached its burden of proving that defendant had been convicted of at least one felony. The trial court agreed.
La. R.S. 14:95.1 states in pertinent part, “It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(13) which is a felony ... to possess a firearm or carry a concealed weapon.”
The bill of information alleged that defendant previously was convicted of aggravated battery and armed robbery, both of which are listed as crimes of violence in La. R.S. 14:2(13).
The Supreme Court of Louisiana has articulated the elements of the crime of possession of a firearm by a convicted felon as (1) possession of a firearm; (2) conviction of an enumerated felony; (3) absence of a ten year statutory period; and (4) general intent to commit the offense. State v. Husband, 437 So.2d 269, 271 (La.1983). Thus, in a prosecution for possession of a firearm by a convicted felon, the State must prove that the defendant is indeed a convicted felon. State v. Sanders, 357 So.2d 492, 493 (La.1978).
In Sanders, the supreme court held that the use of more than one prior conviction is permissible as proof of an “essential element” of the crime charged, as follows:
Evidence of both of defendant’s previous felony convictions was admissible at trial as proof of an element of the crime charged and the manner in which the present offense was committed, proof of either prior conviction being sufficient to support defendant’s conviction for the present offense. Hence, the trial judge properly permitted introduction in evidence of both of defendant’s previous felony convictions.
357 So.2d at 494.
In State v. Ball, 99-0428 (La.11/30/99), 756 So.2d 275, the court held that in a prosecution for possession of a firearm by a convicted felon, the State could introduce evidence of the name and nature of the defendant’s prior conviction, even though the defendant had offered to stipulate that he had been convicted of a prior felony.
In the instant case, the trial judge denied defendant’s motion in limine and allowed the State to introduce evidence of two of defendant’s previous convictions. Based on a review of the record and the *645 law, we find that the trial court’s denial of defendant’s motion in limine was proper.
MOTION TO SUPPRESS
As noted above, defendant’s motion to suppress evidence was denied both by the trial court and by this Court on defendant’s application for supervisory review. Defendant contended the evidence was obtained through an illegal search after an illegal arrest.
In denying defendant’s writ application, we ruled as follows:
Thus, Officer Guidry had sufficient information for an ordinary police officer to believe that relator [defendant] had committed a crime. Further, under Chimel, Officer Guidry was justified in searching the space within relator’s immediate control. [Footnote omitted.] This space included looking under the sofa cushion where relator was seated when the officers entered the room in order to find weapons which relator could use against the officers or other evidence which may be destroyed.
Accordingly, we find the trial judge did not err in denying the Motion to Suppress the Evidence.
State v. Washington, 99-K-1284, page 6 (La.App. 5 Cir. 12/10/99).
In State v. Fontenot, 550 So.2d 179 (La. 1989), the Louisiana Supreme Court held that an appellate court’s pre-trial denial of supervisory review is a decision not to |, ..exercise its extraordinary powers and does not bar reconsideration of the issues on appeal.
The decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 74, wit denied, 99-1077 (La.9/24/99), 747 So.2d 1118. In determining whether the ruling on a motion to suppress was correct, the court is not limited to the evidence adduced at the hearing on the motion, but may consider all pertinent evidence given at the trial of the case. State v. Chopin, 372 So.2d 1222, 1223 (La.1979).
In the instant case, the evidence at trial presented substantially the same facts and circumstances surrounding the seizure at issue as was indicated by the testimony of Officer Chad Guidry, the witness at the hearing on the motion to suppress. The evidence adduced at trial does not affect the result this Court already reached in this case; therefore, we find no error in the denial of the motion to suppress.
ERROR PATENT DISCUSSION
The record was reviewed for errors patent, pursuant to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir. 1990). The review discloses patent errors, none of which are reversible error, but one of which requires correction.
First, we note that the trial court failed to inform defendant of the prescriptive period for post-conviction relief as mandated by La.C.Cr.P. art. 930.8, which limits the time within which to apply for post-conviction relief to two years after the judgment of the conviction and sentence has become final.[1]
h ¡¿Pursuant to our usual procedure, therefore, we shall instruct the trial court to remedy the matter with an appropriate notice to defendant. State v. George, 99- *646 887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975.
Second, the eommitmenVnainute entry does not indicate that the jury was sworn as required by La.C.Cr.P. arts. 788 and 790. However, no mention of jury irregularities was made in the trial court or on appeal. Therefore, consideration of that issue is waived. State v. Wilkinson, 00-339, p. 13 (La.App. 5 Cir. 10/19/00), 772 So.2d 758.
Third, we note that the sentence is illegally lenient, in that the trial court did not impose the mandatory fine required by La. R.S. 14:95.1. However, where the State fails to raise the issue, this Court cannot correct an illegally lenient sentence. State v. Norman, 99-600 (La.App. 5 Cir. 2/16/00), 756 So.2d 525, 532.
DECREE
For the foregoing reasons, the defendant’s conviction and sentence are affirmed. However, the matter is remanded and the district court is ordered to advise the defendant of the provisions of La. C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings.

CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED WITH INSTRUCTION.

. Although the minute entry of the sentencing indicates defendant was given the proper advice, the transcript shows that in fact no such information was given to the defendant in open court.