514 So.2d 646 (1987)
STATE of Louisiana, Appellee,
v.
Odessa GIPSON, Appellant.
Nos. 18966-KA to 18968-KA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1987.
Rehearing Denied November 25, 1987.
*648 M. Dale Peacock, Monroe, for appellant.
George Ross, Asst. Dist. Atty., Monroe, for appellee.
Before MARVIN, FRED W. JONES, Jr., and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
In these consolidated cases, the defendant Gipson pleaded guilty to one count of issuing worthless checks (R.S. 14:71) and three counts of jumping bail (R.S. 14:110). The defendant was sentenced to the following prison terms: one year on the issuing worthless checks charge; 10 months on the jumping bail charge; 7 months on each of the other two jumping bail counts. The sentences were to run consecutively, totaling 3 years.
Factual Context
The conduct giving rise to the charge of issuing worthless checks occurred between July 8, 1985 and July 25, 1985, when Ms. Gipson issued three checks totaling $169.15 drawn on Bastrop National Bank to grocery stores in Ouachita Parish. The first check was issued on July 8, 1985 to County Market, for $69.15. The second check was issued on July 12, 1985 to County Market for $50.00. The third check was issued on July 25, 1985 to Budget Saver for $50.00. These checks were deposited and returned by the drawee bank stamped "account closed." Defendant never paid the amount of these checks to the merchants and a warrant for her arrest was issued on January 9, 1986. She was charged by bill of information with one count of issuing worthless checks. Bond was fixed at $750. Arraignment was set for March 5, 1986 and defendant failed to appear.
On April 21, 1986, another bill of information was filed against defendant for jumping bail on March 5 on the issuing worthless checks charge. As she did not appear as required on August 6, 1986 on the issuing worthless checks and jumping bail charges, she was again charged on September 3, 1986 by another bill of information with two counts of jumping bail. These three bills of information were dealt with in one proceeding.
Waiver of Counsel
In this assignment of error defendant alleges that she did not validly waive her constitutional right to counsel prior to pleading guilty.
The 6th amendment provides that an accused shall enjoy the right to have the the assistance of counsel for his defense in all criminal prosecutions. U.S.C.A. Const. Amend. 6. The U.S. Supreme Court, in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), established that this constitutional right is made obligatory upon the states through the 14th amendment, holding that an indigent defender in a criminal prosecution in a state court has the right to have counsel appointed for him.
In 1972, the Supreme Court held that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor or felony, unless he was represented by counsel at his trial. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). There the court noted that the assistance of counsel is often a requisite to the very existence of a fair trial.
The court observed that this problem is not only applicable to trial but also to the guilty plea. In those cases, it said, counsel is needed in order that the accused may know precisely what he is doing so that he is fully aware of the prospect of going to jail or prison and is treated fairly by the prosecution. Argersinger, supra, 92 S.Ct. at 2011.
That case, however, did not establish what is required for a valid waiver of the right to counsel. In Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 *649 (1975), the Supreme Court held that an accused has an affirmative right of self-representation. However, since self-representation entails the relinquishment of many traditional benefits associated with the right to counsel, a defendant must knowingly and intelligently waive these rights in order to represent himself. In establishing what is required for a valid waiver of counsel, the court stated that the record must indicate that the trial judge tried to access the literacy, competency, understanding and volition of the defendant before accepting a waiver. The record must show that the defendant was made aware of the dangers and disadvantages of self-representation so that it is evident that he knew what he was doing, and that the choice to forego counsel was made with "eyes open." Faretta, supra; State v. Bell, 381 So.2d 393 (La.1980); City of Monroe v. Wyrick, 393 So.2d 1273 (La.1981); State, City of Bossier City v. Walpole, 459 So.2d 172 (La.App.2d Cir.1984); writ denied, 462 So.2d 207 (La.1985); State v. Washington, 421 So.2d 887 (La.1982).
The record indicates that on September 29, 1986, at arraignment, when asked if she had an attorney, the defendant said, "No I don't want one your honor." On October 1, 1986, the court asked the defendant if she had been referred to the Indigent Defender Board. The defendant answered that she had but that she wanted to go ahead and plead. After a recess, on October 1, 1986, the colloquy between the defendant and the court ensued as follows:
By The Court: Come around and be sworn. Ms. Gipson, before you come around let me tell you that ... do you have a lawyer?
By Ms. Gipson: No, sir.
By The Court: Have you talked to a lawyer?
By Ms. Gipson: No. sir.
By The Court: Don't you want to at least talk to a lawyer before you plead guilty to all these things?
By Ms. Gipson: No, sir.
By The Court: And you've thought it over and decided this is what you want to do?
By Ms. Gipson: Yes, sir. I committed the crime.
After some discussion about the charges of jumping bail, a further discussion between the trial court and the defendant followed:
Q. Do you understand ... first I think... do you understand that you have a right to have an attorney with you when you enter a plea. Do you understand that?
A. Yes, sir.
Q. Speak up nice and loud.
A. Yes, sir.
Q. If you can't afford an attorney the Court would appoint an attorney to represent you without any cost. Do you understand that?
A. Yes, sir.
Q. Now, do you want me to consider appointing an attorney to represent you?
A. No, sir.
Q. You want to give up that right and proceed with these pleas?
A. Yes, sir.
Q. Okay. Now, Ms. Gipson, before I can accept your pleas I have to make sure you understand some rights because if you plead guilty you are going to be giving up these rights. Do you understand that?
A. Yes, sir.
Q. First, tell me your full true and correct name?
A. Odessa Gipson.
Q. Have you ever been known by any other name?
A. No.
Q. Tell me your age and your date of birth.
A. Third month, twenty date, fifty-three. I'm thirty-three.
Before accepting the plea, the trial court asked the defendant about her educational background and her ability to read and write.
It is, of course, the better practice to advise the defendant, in detail, of the dangers and disadvantages of self-representation. The question here is whether, in *650 the absence of that specific advice, the record provides a basis for concluding the defendant was aware of this danger and disadvantage.
According to the information in the record, the defendant is a 33 year old female with a 9th grade education. She had a prior criminal record consisting of an aggravated battery conviction in 1976, for which she received a five year probated prison sentence. She was next charged in 1981 with issuing a worthless check for $300.
As she was a second felony offender and had violated the terms of her probation, she was technically ineligible for a probated or suspended sentence. However, the court entered into a plea bargain to reduce that offense to a misdemeanor and allowed her to be placed on active supervised probation along with paying restitution for the checks. Thus the court sentenced her to a six month suspended sentence with a two year period of probation including making restitution in the amount of $300 to the merchant.
It is apparent from these facts that prior to these offenses the defendant had extensive experience with the judicial process and criminal justice system. Consequently, under the circumstances existing in these particular cases there is a sound basis for concluding defendant was, at the time of waiving legal counsel, aware of the danger and disadvantage of self-representation.
This assignment of error is without merit.
Complaint of Excessive Sentences
Defendant does not argue the excessiveness of all the sentences, but rather claims that the two sentences at hard labor of seven months for the two counts of jumping bail should not have been ordered to be served consecutively. That sole issue, as well as the general excessiveness of the sentence, will be addressed.
The defendant argues that since the two counts for jumping bail arose from the same instance, the sentences for those two should not run consecutively. La.C. Cr.P. Art. 883 provides:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
This article does not mandate that the sentences for offenses based on the same act or transaction be served concurrently. Concurrent, rather than consecutive sentences, however, are the usual rule for convictions arising out of a single course of criminal conduct, at least where the offender has no previous criminal record and where there is no showing that the public safety requires a longer sentence. State v. Lewis, 430 So.2d 1286 (La.App. 1st. Cir. 1983), writ denied, 435 So.2d 433 (La. 1983); State v. Young, 432 So.2d 1012 (La.App. 1st Cir.1983). Since the defendant had a previous criminal record, this rule does not apply here. The trial court did not err in sentencing the defendant to consecutive sentences on the two counts of jumping bail.
The sentencing guidelines of La.C. Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App.2d Cir.1983), writ denied, 435 So.2d 438 (La.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Nealy, 450 So.2d 634 (La.1984); State v. Knighton, 449 So.2d 1171 (La.App.2d Cir. 1984); State v. Smith, 433 So.2d 688 (La. 1983); State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983), writ denied, 439 So.2d 1074 (La.1983); State v. Cunningham, 431 *651 So.2d 854 (La.App.2d Cir.1983), writ denied, 438 So.2d 1112 (La.1983).
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C. Cr.P. Art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984); State v. Hammonds, supra. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which must be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. McGhee, 469 So.2d 1051 (La. App.2d Cir.1985).
Second, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates La. Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, supra. The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Nelson, supra; State v. Hammonds, supra
In these cases the trial judge adequately considered the guidelines set forth in Article 894.1, paying particular attention to defendant's criminal record as set forth above. The maximum imposable prison term on the issuing worthless checks charge was two years. The maximum imposable prison sentence for jumping bail is also two years. Defendant received a total prison sentence of three years out of a possible eight year sentence. Under the circumstances, we do not consider this excessive.
This assignment of error is without merit.
Decree
For the reasons set forth, defendant's convictions and sentences are affirmed.

ON APPLICATION FOR REHEARING
Before JASPER E. JONES, FRED W. JONES, Jr., LINDSAY, MARVIN and SEXTON, JJ.
Rehearing denied.