DANIEL L. DYSART, Judge.
11 Defendant, Don Hayes, appeals his conviction of possession with the intent to distribute heroin. For the reasons that follow, we affirm his conviction and sentence.
PROCEDURAL BACKGROUND
Defendant was charged with, and pled not guilty to, one count of possession with the intent to distribute heroin, a violation of La. R.S. 40:966(A)(1). The trial court denied defendant’s motion to suppress and the matter proceeded to a jury trial from February 14-16, 2011. The jury found defendant guilty as charged. Defendant then filed motions for new trial and for post-judgment verdict of acquittal. Both motions were denied on May 20, 2011, at which time the court sentenced defendant to serve four years at hard labor, with credit for time served.
FACTUAL BACKGROUND
On the afternoon of March 16, 2010, New Orleans Police Officer David Aranda, a member of the 1st District Task Force, was patrolling an area known for narcotics and drug trafficking. While driving on N. Villere St., a one-way street, Officer Aran-da noticed a vehicle travelling the wrong way. He turned his vehicle around to follow the vehicle, activating his sirens and lights. The vehicle pulled 12over and Officer Aranda approached the vehicle which was being driven by defendant. Officer Aranda advised defendant of his traffic violations. When Officer Aranda requested defendant’s driver’s license, insurance and vehicle registration, defendant advised that his license was suspended. Officer Aranda then arrested defendant, advised him of his Miranda rights and conducted a search incident to defendant’s arrest. In doing so, Officer Aranda retrieved a plastic bag from defendant’s right rear pocket containing a brown powdery substance and $1,545.00 in cash. A field test confirmed that the substance in the plastic bag was heroin and at trial, a criminologist for the New Orleans Police Department confirmed that the substance was heroin and it weighed 15.6 grams.
*671 ERRORS PATENT
Our review of the record reveals no patent errors.
ASSIGNMENT OF ERROR NO. 1
Defendant’s first assignment of error is that the trial court failed to advise him of his right to appointed counsel when, during the course of trial, he discharged his counsel and chose to represent himself. In this regard, defendant maintains that this failure prevented him from making a knowing and intelligent waiver of counsel. Defendant also submits that, on this basis, the trial court should have granted his motion for new trial.
Under the Sixth Amendment of the U.S. Constitution, an accused in a criminal trial has the right to the assistance of counsel. This amendment has been interpreted to “impl[y] a right of self-representation.” State v. Bell, 09-0199, p. 13 (La.11/30/10), 53 So.3d 437, 445, citing, Faretta v. California, 422 U.S. 806, 822, 95 S.Ct. 2525, 2534, 45 L.Ed.2d 562 (1975). To that end, a defendant may elect to represent himself if the choice is “knowingly and intelligently made” and the | ..¡assertion of the right is “clear and unequivocal.” State v. Campbell, 06-0286, p. 63 (La.5/21/08), 983 So.2d 810, 851. There is no particular formula which must be followed by the trial court in determining whether a defendant has validly waived his right to counsel. State v. Carpenter, 390 So.2d 1296 (La.1980). The propriety of granting a defendant the right to represent himself should not be judged by what happens in the subsequent course of the representation; it is the record made in recognizing that right that is determinative. State v. Hodges, 98-0513 (La.App. 4 Cir. 11/17/99), 749 So.2d 732, 736, citing, State v. Dupre, 500 So.2d 873 (La.App. 1 Cir.1986).
In State v. Santos, our Supreme Court held that, when a defendant makes an unequivocal request to represent himself, the judge need determine only whether the accused is competent to waive counsel and “voluntarily exercising his informed free will.” State v. Santos, 99-1897, p. 3 (La.9/15/00), 770 So.2d 319, 321 (quoting Faretta v. California, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975)). What is a “knowing and voluntary waiver” was discussed by the Louisiana Supreme Court in State v. Carter, 10-0614, p. 25 (La.1/24/12) 26, 84 So.3d 499, 520:
“[ t]he determination of whether there has been an intelligent waiver of right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.” Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); see also State v. Strain, 585 So.2d 540, 542 (La.1991)(trial courts should inquire into the accused’s age, education, and mental condition in deciding, on a totality of the circumstances, whether accused understands significance of waiver). Further, a defendant must be made aware of the dangers and disadvantages of self-representation so that the record demonstrates that “ ‘he knows what he is doing and his choice is made with his eyes open.’” Faretta, 422 U.S. at 835, 95 S.Ct. at 2541 (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)). A defendant, in other words, must know the consequences of his action. City of Monroe v. Wyrick, 393 So.2d 1273, 1275 (La.1981). The assertion of the right must also be clear and unequivocal. See Faretta, 422 U.S. at 835, 95 S.Ct. at 2541; see also State v. Hegwood, 345 So.2d 1179, 1181-82 (La.1977).
*672 The record in this matter reflects that the trial court appointed counsel to represent defendant at his arraignment on March 24, 2010. John Fuller was then retained by defendant and enrolled as his counsel on March 31, 2010. Mr. Fuller (or his associate) appeared in court for defendant on numerous occasions in 2010: March 31, May 7, June 3, August 16, August 31, September 1, October 14, October 20 and December 7, and again on February 14, 2011. The trial began on February 16, 2011 and, shortly after the State’s first witness, Officer Aranda, testified, defendant invoked his right to self-representation. He advised the court that he no longer trusted his retained counsel.
At that time, the trial judge inquired into defendant’s educational background, to which defendant indicated that he was 36 years old, had a year of college and had “studied [his] case.” The trial judge advised defendant against self-representation, stating that “it is almost always unwise and may be detrimental.” She further advised him that he would receive no special treatment, would be required to follow the rules of criminal procedure and that the “State ... [was] represented by experienced and professional attorneys who [would] not go easy on [him] just because [he is] not a lawyer.” She also indicated that defendant would not have “any extra time for preparation” or “staff” or “investigators.” To each of these ad-visements, defendant responded that he understood and he repeatedly stated that he wanted to represent himself.
lfiThe trial judge likewise inquired as to whether defendant had given thought to the arrest and defendant responded that he “sleep[s] with this case.” She confirmed that defendant can read and write, has no problems with sight or hearing and has never treated for any mental issues.
Defendant acknowledged that he understood the charges against him, the penalty and the fact that the State was alleging that he was a “multiple bill” which could result in his imprisonment for life. The trial judge, again, repeatedly advised defendant against self-representation and asked whether he was “positive” that this is what he wanted and defendant responded in the affirmative.
The trial judge then appointed Jay Daniels, an associate of John Fuller, to act as “stand-by” counsel and to assist defendant during the trial, if needed. Mr. Daniels objected to this appointment, on the basis that he had been brought into the case by Mr. Fuller and based upon defendant’s expressed distrust of Mr. Fuller, he did not believe he could be effective in assisting defendant.
Based on the record, we find that the trial court, in its discretion, properly allowed defendant to represent himself. Based upon defendant’s .extensive experience with the criminal justice system, coupled with the trial court’s questioning of defendant, we find that defendant was well aware of the “dangers and disadvantages of self-representation,” which defendant both acknowledged and understood. We therefore conclude that defendant’s waiver of his right to counsel was both “knowing and voluntary” and “clear and unequivocal.” We further conclude that defendant chose to represent himself knowing the “consequences of his actions.”
. We recognize that, during the colloquy in which defendant chose to represent himself, he made comments suggesting that he wanted to retain new | acounsel. For example, he stated, “I know the Court not gonna give me time to hire another attorney.” Similarly, when the trial court recommended that he continue with his retained counsel, “if that’s the only choice I have is John Fuller, your Honor, I would like to *673 represent myself.” However, we find these comments to be inconsequential in light of the record as a whole.
The trial court’s function is to determine “whether the defendant understands the significance of the waiver under the totality of the circumstances.” Hodges, supra, 749 So.2d at 736, citing, State v. Strain, 585 So.2d 540 (La.1991). Among the factors considered by the Hodges court was the defendant’s prior criminal history and the court noted that it “reveal[ed] that he is quite familiar with the criminal justice system.” Id. at 738. Like the defendant in Hodges, here, defendant has a significant criminal history — three prior convictions, all of which had elements of possession of illegal drugs (and one of which was a possession with intent to distribute). As such, this is not defendant’s first encounter with the criminal justice system.
The Louisiana Fifth Circuit, in State v. Norman, 99-600, pp. 6-7 (La.App. 5 Cir. 2/16/00), 756 So.2d 525, 529, observed that, while a reviewing court should consider whether the record provides a basis for concluding that a defendant was aware of the dangers and disadvantages of self-representation, prior extensive experience with the judicial process and the criminal justice system, such as experience obtained through prior felony convictions, may indicate such awareness on the defendant’s part. See also, State v. Poche, 2005-1042, pp. 12-13 (La.App. 3 Cir. 3/1/06), 924 So.2d 1225, 1234, wherein the court found that “[bjased on |.7[defendant’s] prior extensive experience with the criminal justice system, we find that defendant was aware of the dangers and disadvantages of self-representation.”[1]
Likewise, we find our jurisprudence interpreting La.C.Cr.P. art. 515, which deals with substitution of counsel for court-appointed counsel,[2] to be instructive and to provide guidance in the instant matter. In State v. Lee, the Louisiana Supreme Court noted:
This court has ... consistently interpreted this right (the right to assistance of counsel) as one which cannot be manipulated to obstruct the orderly procedure in our courts and which cannot be used to interfere with the fair administration of justice. The right of defendant to counsel of his choice must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system of which it is a part. Once the day of trial arrives, the question of substitution of counsel rests largely within the discretion of the trial judge.
364 So.2d 1024, 1028 (La.1978). (Citations omitted).
Similarly, in State v. McClintock, 535 So.2d 1231 (La.App. 3 Cir.1988), the defendant sought to dismiss his attorney and represent himself after voir dire was conducted. The Third Circuit found no violation of the right to counsel when the trial court refused to dismiss the defendant’s attorney and have new counsel appointed when the defendant expressed general dissatisfaction with his attorney. Importantly, the McClintock court reiterated that the “right to counsel of choice must be exercised at a reasonable time, in a reason *674 able manner and at an appropriate stage of the proceedings,” also noting that “[alb-sent a justifiable basis, there is no constitutional right to make a new choice of counsel on the very date 18trial is to begin, with the attendant necessity of a continuance and its disrupting complications.” Id. at 1233. (Citations omitted). See also, State v. Bonit, 05-0795, p. 10 (La.App. 1 Cir. 2/10/06), 928 So.2d 638, 639, (“[t]he trial court correctly denied the motion to hire private counsel. The day of trial was too late of a stage for the defendant to assert his right to hire private counsel. Granting of the motion would have obstructed the orderly procedure of the trial court.”)
In the instant matter, defendant was represented by counsel on ten occasions prior to trial, the last of which was 2 days prior to the commencement of trial. At no time during any of these occasions did defendant raise any issues concerning his representation by Mr. Fuller (or his associate). Defendant waited until after voir dire, opening statements and the questioning of the State’s main witness to challenge his representation. Obviously, defendant was displeased with the manner in which the trial was proceeding and was seeking simply to delay the trial when he discharged his attorney. We find that defendant did not exercise his right to the counsel of his choice at a reasonable time, in a reasonable manner, or at an appropriate stage.
Defendant’s assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 2
We now turn to defendant’s second assignment of error, namely, that the trial court erred in granting two of the State’s challenges for cause. One of the prospective jurors expressed distrust of police officers, while the other indicated an inability to convict base on the testimony of one police officer. Defendant, however, maintains that both were sufficiently rehabilitated to serve on the jury. Defendant argues that the State’s use of these peremptory challenges effectively allowed the State more challenges than those to which it was entitled.
| cRa. C. Cr. P. art. 797 sets forth several grounds for challenges for cause, including that a prospective “juror is not impartial, whatever the cause of his partiality ...” La. C. Cr. P. art. 797(2). It is the party seeking to exclude a juror for cause who has the burden of demonstrating, through questioning, that the juror lacks impartiality. State v. Taylor, 99-1311, p. 13 (La.1/17/01), 781 So.2d 1205, 1218.
We note that a challenge for cause is not warranted when a prospective juror has voiced an opinion seemingly prejudicial, but after further inquiry, the juror demonstrates the ability and willingness to decide the case impartially according to the law and evidence. State v. Kang, 02-2812, p. 5 (La.10/21/03), 859 So.2d 649, 653. However, a challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. Id.
As we recently reiterated, “[a] trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion ... Only where it appears, upon review of the voir dire examination as a whole, that the trial court’s exercise of that discretion has been arbitrary or unreasonable, resulting in prejudice to the defendant, will an appellate court reverse that ruling.” State v. *675 Kirk, 2011-1218, p. 10 (La.App. 4 Cir. 8/8/12), 98 So.3d 934 (Citations omitted).
Hortense Coston, one of the jurors for which the trial court granted the State’s challenge for cause, initially responded that she would need “[m]ore than just the word of the cops” and could need “other witnesses other than the cops, the 1 ipNew Orleans Police Department” in considering the type of evidence needed in a “drug case.” She then indicated that “you can’t trust them [the police].” She repeated her distrust of the police and indicated that she would not be able to be fair and impartial when testimony was exclusively from police officers, going so far as to say that, even if she “already know[s] in [her] mind that they lie.” Defense counsel attempted to rehabilitate her, and when asked whether she could follow the law and “vote guilty,” she indicated that “maybe I’ll say yes that I could.” However, she later indicated that she could not trust the police.
The other juror excused for cause was Carols Williams who advised that he would have “a problem” if the testimony against defendant came from one police officer, alone, and that he would need more than the testimonial evidence to convict. At the request of both parties, Mr. Williams was questioned in the trial court’s chambers and he again stated that he “[couldn’t] be any clearer” that if the evidence was based on one witness, it would be “hard for [him] to convict.” However, on further questioning by the trial court, Mr. Williams stated that he would not have a problem if the only evidence was testimonial. However, Mr. Williams indicated that he would “absolutely” hold a police officer to a “higher standard” than any other witness.
Based on the foregoing, we do not find any abuse in the trial court’s discretion in granting the State’s peremptory challenges to either of these prospective jurors. Both Ms. Coston’s and Mr. Williams’ responses, as a whole, reflect a lack of impartiality as is contemplated by La. C. Cr. P. art. 797. Defendant’s assignment of error has no merit.
^CONCLUSION
Based on the foregoing, we affirm defendant’s conviction and sentence.
AFFIRMED

. See also, State v. Gipson, 514 So.2d 646 (La.App. 2 Cir.1987).

. La.C.Cr.P. art. 515 provides as follows: “Assignment of counsel shall not deprive the defendant of the right to engage other counsel at any stage of the proceedings in substitution of counsel assigned by the court. The court may assign other counsel in substitution of counsel previously assigned or specially assigned to assist the defendant at the arraignment.”