# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-338


**STATE OF LOUISIANA**

**VERSUS**

**JOHN PAUL SIMIEN**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. CR-2020-0272
HONORABLE E. DAVID DESHOTELS, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN E. CONERY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and John E. Conery, Judges.


**CONVICTIONS AND SENTENCES AFFIRMED.**

**J. Rodney Baum**
**Louisiana Appellate Project**
**830 Main Street**
**Baton Rouge, Louisiana  70802-1309**
**(225) 387-1142**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**John Paul Simen**

**Joe Green**
**District Attorney**
**33rd Judicial District**
**John Richardson**
**Assistant District Attorney**
**Post Office Box 839**
**Oberlin, Louisiana  70655**
**(337) 639-2641**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**CONERY, Judge.**

## FACTS AND PROCEDURAL HISTORY

Information was provided to the Allen Parish Sheriff's Office regarding the potential location of Defendant, John Paul Simien, in a trailer park on Highland Drive in Kinder, Louisiana. The informant, Mr. Robert Smith, who was the owner of the trailer, indicated that Defendant had been dealing various drugs to the residents of the trailer park. Defendant was wanted by authorities on multiple active felony warrants issued through the 33rd Judicial Court of Allen Parish.

Detective Garret Beason, along with two other Allen Parish Sheriff's officers, set up a surveillance around six or six-thirty in the evening of December 17, 2019 at the designated location. The officers observed Defendant turn into the trailer park and stop at 115 Highland Drive, Lot.13. Prior to entering the trailer and making contact with Defendant, the officers confirmed that the outstanding felony warrants naming Defendant were still active.

Defendant arrived at the trailer park between eight and nine o'clock p.m. on the evening in question. The officers followed Defendant into the trailer, having already obtained permission from the owner, Mr. Smith, to enter his trailer. They announced themselves and told Defendant to put his hands up. According to the officer's trial testimony, Defendant resisted and after much effort his hands were handcuffed behind his back. Defendant was searched and read his Miranda rights for the first time. Defendant was ultimately transported to the Allen Parish Sheriff's Office by other officers who arrived on the scene. During the search, Defendant was found in possession of the items forming the basis of the charges;[1] and was

---

[1] Counsel for Defendant questioned the potential jury members during *voir dire* about the use of body cameras by police officers. However, at the time of Defendant's arrest in 2019, there

subsequently charged by bill of information with possession with intent to distribute 19.3 grams of methamphetamine, in violation of La.R.S. 40:967(A)(1); possession with intent to distribute fentanyl, in violation of La.R.S. 40:967(A); possession with intent to distribute ecstasy, in violation of La.R.S. 40:966; distribution of alprazolam, in violation of La.R.S. 40:969(A); possession, distribution, or sale of pantoprazole, in violation of La.R.S. 40:1238.1; possession, distribution or sale of promethazine syrup, in violation of La.R.S. 40:1238.1; resisting an officer, in violation of La.R.S. 14:108; possession of a firearm by a convicted felon, in violation of La.R.S. 14:95.1; illegal use, possession or control of weapons during commission of a crime of violence or possession of a controlled dangerous substance, in violation of La.R.S. 14:95(E); operating a vehicle with a suspended license, in violation of La.R.S. 32:415; and possession of drug paraphernalia, in violation of La.R.S. 40:1023(C) and La.R.S. 40:1025. The bill of information was orally amended to dismiss five of the charges, and the case ultimately proceeded to trial on September 13-15, 2021 on an amended bill of information which included six of the original eleven counts.

After one day of jury selection followed by one day of trial testimony, Defendant was unanimously convicted on all six counts as charged. No post-trial motions were filed by trial counsel.

Defendant was sentenced on January 31, 2022 as follows: possession with intent to distribute methamphetamine, eight years in the Louisiana Department of Corrections; possession with intent to distribute fentanyl, twenty years in the Louisiana Department of Corrections; possession with intent to distribute ecstasy, eight years in the Louisiana Department of Corrections; distribution of alprazolam,

---

were no body cameras available to the officers. Detective Garrett Beason testified at trial that body cameras were only obtained by the Allen Parish Sheriff's officers a couple of months before trial.

eight years in the Louisiana Department of Corrections; possession of a firearm by a felon, ten years in the Louisiana Department of Corrections without benefit of parole, probation, or suspension of sentence; and illegal carrying of a weapon, eight years in the Louisiana Department of Corrections without benefit of parole, probation, or suspension of sentence. Each of Defendant's sentences was ordered to be served concurrently.

Defendant timely appealed his convictions and sentences raising seven assignments of error.

## ASSIGNMENTS OF ERROR

[1.] The trial court erred by denying three challenges for cause made by the defense during jury selection.

[2.] The trial court erred by granting the prosecution's challenges for cause during jury selection.

[3.] Defense counsel provided ineffective assistance of counsel by failing to move for sequestration of witnesses.

[4.] The trial court erred by denying defense objection to admission of firearm into evidence at trial.

[5.] The trial court erred by denying defense objection to admission of 13 plastic bags with residue.

[6.] Trial court erred by denying defense objection to state's reference to defendant's failure to call certain witnesses during closing argument.

[7.] Due to error patent, the defendant's conviction and/or sentence should be reversed.

### Errors Patent & Assignment Of Error Number 7

In Assignment of Error No. 7, Defendant requests that this court conduct an error patent review of the record and reverse the conviction and/or sentence if such error patent is found. In accordance with La.Code Crim.P. art. 920, all appeals are

reviewed by the court for errors patent on the face of the record whether requested or not. After reviewing the record, we find there is one error patent.

Louisiana Revised Statutes 14:95.1 requires the imposition of a mandatory fine of not less than one thousand dollars nor more than five thousand dollars if found guilty of possession of a firearm by a convicted felon. The trial court failed to impose this fine as required by La.R.S. 14:95.1; however, no action will be taken based on this circuit's decision to not recognize illegally lenient sentences unless raised as error on appeal. *See State v. Aguillard*, 17-798 (La.App. 3 Cir. 4/11/18), 242 So.3d 765, *writ denied*, 18-1207 (La. 3/6/19), 266 So.3d 897.

### Assignment Of Error Number 1 – Defense Challenge To Trial Court's Voir Dire Rulings

Defendant contends the trial court erred in denying three challenges for cause for jurors Rebecca Sonnier, Leslie Gray and Brenda G. Tyler. Louisiana Code of Criminal Procedure Article 797 allows for either party to challenge a prospective juror for cause for certain reasons. The reasons at issue in this assignment of error are lack of impartiality and "relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict." La.Code Crim.P. art. 797(3).

Appellate review of rulings on challenges for cause are as follows:

> Louisiana Constitution article I, section 17 guarantees a defendant the "right to full voir dire examination of prospective jurors and to challenge jurors peremptorily." *State v. Juniors*, 03-2425, p. 7 (La. 6/29/05), 915 So.2d 291, 304. The number of peremptory challenges granted to a defendant in a trial of an offense punishable necessarily by imprisonment at hard labor, such as the one currently before this court, is fixed by law at twelve. *See* La. Const. art. I, 17(A); La.[Code Crim.]P. art. 799. When a defendant uses all twelve of his

4

peremptory challenges, an erroneous ruling by a trial court on a challenge for cause that results in depriving the defendant of a peremptory challenge constitutes a substantial violation of the defendant's constitutional and statutory rights, requiring reversal of the conviction and sentence. *Juniors*, 03-2425 at 8, 915 So.2d at 305 (citing *State v. Robertson*, 92-2660 (La. 1/14/94), 630 So.2d 1278, 1280, and *State v. Ross*, 623 So.2d 643, 644 (La.1993)). In summary, where all peremptory challenges have been used, as in this case, a defendant need only demonstrate the erroneous denial of a challenge for cause to establish reversible error warranting reversal of a conviction and sentence. *See Juniors*, 03-2425 at 8, 915 So.2d at 305.

A defendant may challenge a juror for cause if "[t]he juror is not impartial, whatever the cause of his partiality." La.[Code Crim.]P. art. 797(2). Additionally, La.[Code Crim.]P. art. 797(3) provides a defendant may challenge a juror for cause on the ground that "[t]he relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict." A "juror [who] will not accept the law as given to him by the court" may also be challenged for cause by the defendant. *See* La.[Code Crim.]P. art.797(4).

*Voir dire* examination of prospective jurors is designed to discover bases for challenges for cause and to secure information for an intelligent exercise of peremptory challenges. *State v. Drew*, 360 So.2d 500, 513 (La. 1978). The questions propounded are designed to determine any potential adverse influence on the prospective juror's ability to render an impartial verdict. *See Id.* A prospective juror's responses during *voir dire* cannot be considered in isolation. *See State v. Frost*, 97-1771, p. 8 (La. 12/1/98), 727 So.2d 417, 426.

A trial judge is vested with broad discretion in ruling on challenges for cause, and such a ruling is subject to reversal only when a review of the entire *voir dire* reveals the judge abused his discretion. *Robertson*, 630 So.2d at 1281. The trial judge's refusal to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the prospective juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. *Id*.

*State v. Dotson*, 16-0473, pp. 3-5 (La. 10/18/17), 234 So.3d 34, 38-39 (footnotes

omitted). *See also State v. Harris*, 18-800 (La.App. 3 Cir. 6/5/19), 274 So.3d 178,

*writ denied*, 19-1107 (La. 3/9/20), 294 So.3d 486.

<u>Rebecca Sonnier</u>

Defendant notes that during *voir dire*, Ms. Sonnier testified that her brother-in-law was a Kinder police officer, and her cousin was the Kinder Chief of Police. Because of this, Defendant claims that she would probably tend to view their credibility more favorably. Accordingly, Defendant contends the trial court erred in denying his challenge for cause of this prospective juror.

During *voir dire* examination, the exchange concerning Ms. Sonnier's connection to law enforcement was as follows:

> MS. SONNIER: I do. I'm sorry, I do have a brother-in-law that is in the Navy. He is now in law enforcement.
>
> MR. VIDRINE: Oh[,] now he is in law enforcement?
>
> MS. SONNIER: Uh huh.
>
> MR. VIDRINE: Is he a police officer or a federal agent.
>
> MS. SONNIER: He is a police officer.
>
> MR. VIDRINE: Where at?
>
> MS. SONNIER: In Kinder.
>
> MR. VIDRINE: And what is his name?
>
> MS. SONNIER: Brian Fontenot. And my third cousin is also the Chief of Police in Kinder.
>
> MR. VIDRINE: Okay. Having those family members as law enforcement, would that affect how you determine the credibility of a law enforcement officer that is on the witness stand?
>
> MR. SONNIER: I would be fair. I mean, it wouldn't bother me.
>
> MR. VIDRINE: So[,]you would still be able to be fair and impartial - -
>
> MS. SONNIER: Right.
>
> MR. VIDRINE: Okay.
>
> MS. SONNIER: Probably.

The following exchange took place when Defendant challenged Ms. Sonnier for cause:

> MR. VIDRINE:  Yes, sir.  Ms. Rebecca Sonnier, her first cousin is the Chief of Police in Kinder, and they actually arrested my client.

> MS. HOLMES:  Not in this case.

> MR. VIDRINE:  He arrested my client, before in a different case apparently.

> THE COURT:  Arrested your client on this charge?

> MS. HOLMES:  No, sir.

> MR. VIDRINE:  No sir.

> THE COURT:  On another charge?

> MS. HOLMES:  Correct.

> MR. VIDRINE:  Yes, sir.

> THE COURT:  I heard that she is - - from what she said, doesn't show that there was cause that she was biased.

> MS. HOLMES:  I agree.  I think she - -

> THE COURT:  I don't know that she was asked that question even.

> MS. HOLMES:  She didn't demonstrate and say that she would have more favor for law enforcement.  She never said that when I questioned her.  And she was questioned about that - -

> THE COURT:  Also[,] she said that she hadn't heard about this defendant or this case.

> MS. HOLMES:  Correct.

> THE COURT:  All right.  That request is denied.

No objection was lodged by defense counsel to the denial of Defendant's challenge for cause. *See* La.Code Crim.P. art. 800.[2]

The trial court did not err in denying the challenge for cause to prospective juror Sonnier. Although Defendant contends that Ms. Sonnier said she would probably tend to view law enforcement's credibility more favorably, there is no indication in the record that Ms. Sonnier said this. Rather, she was asked whether having family members in law enforcement would affect how she determined the credibility of a law enforcement officer and she said she would be fair and that it would not bother her. When asked if she would still be able to be fair and impartial, she first said "right" and then "probably." Defense counsel did not follow-up with any further questions when she responded "probably."

"[A] mere relationship between a prospective juror and a law enforcement officer is not of itself grounds to strike the juror for cause." *State v. Henderson*, 13-0074, p. 7 (La.App. 1 Cir. 9/13/13), 135 So.3d 36, 44, *writ denied*, 13-2327 (La. 3/21/14), 135 So.3d 617. *See also State v. Lowdins*, 17-157 (La.App. 3 Cir. 10/4/17), 229 So.3d 547, *writ denied*, 17-1923 (La. 6/15/18), 257 So.3d 680. Considered as a whole, Ms. Sonnier's responses do not indicate that having relatives in law enforcement would affect her ability to be impartial. *See Henderson*, 135 So.3d 36. We find the trial court did not err in denying Defendant's challenge of Rebecca Sonnier for cause.

---

[2] Louisiana Code of Criminal Procedure Article 800(A) provides, "A defendant may not assign as error a ruling refusing to sustain a challenge for cause made by him, unless an objection thereto is made at the time of the ruling. The nature of the objection and grounds therefor shall be stated at the time of objection."

Leslie Gray

Defendant contends Mr. Gray's positive view of law enforcement due to his family and friends being so employed meant that he would view the credibility of law enforcement more favorably. During *voir dire*, Mr. Gray was asked if he would give more favor to law enforcement. The juror before him responded to the same question: "No." Mr. Gray's response was "[a]bout the same." Mr. Gray indicated that he has a lot of family and friends who are officers and actually has a cousin who works for Allen Parish, Deputy Simmons. Defense counsel challenged Mr. Gray because he has family members who are in law enforcement, and he did not know if Mr. Gray could be fair and impartial.

Again, as with Ms. Sonnier, there is no indication in Mr. Gray's *voir dire* examination that his connection to law enforcement would affect his ability to be impartial. *See Henderson*, 135 So.3d 36. Therefore, for the same reasons as those stated for the trial court's denial for cause of Ms. Sonnier, including defense counsel's failure to object to the trial court's denial for cause, we find that the trial court did not err in denying the challenge for cause for Leslie Gray.

Brenda Tyler

Defendant complains that Ms. Tyler's past work relationship with Assistant District Attorney Richardson, along with the fact she knew Kelli Vincent, one of the deputies who testified at trial, should have resulted in her dismissal on a challenge for cause. Ms. Tyler was asked whether the fact she had worked with ADA Richardson in the past would result in her giving more favor to the State, and she replied that it would not. When she was asked how she felt about law enforcement in general, Ms. Tyler responded, "positive" but she followed up by confirming that she did not feel she would give more favor to law enforcement.

9

Defense counsel challenged Ms. Tyler due to her past working relationship with Mr. Richardson. Because she had indicated that this would not affect her, the court denied the challenge for cause. Defense counsel also did not lodge an objection to the trial court's denial of his challenge for cause of Ms. Tyler, as required by La.Code Crim.P. art. 800(A).

Further, the trial court did not err in denying this challenge as there was no indication that Ms. Tyler's past employment with the prosecutor made it reasonable to conclude that it would influence her in arriving at a verdict when she indicated it would not. *See State v. Gant*, 06-232 (La.App. 5 Cir. 9/26/06), 942 So.2d 1099, *writ denied*, 06-2529 (La. 5/4/07), 956 So.2d 599, where the fifth circuit upheld the trial court's denial of a challenge for cause of a prospective juror who knew several sheriff's office employees and whose wife worked at the district attorney's office where the juror indicated he would not judge the witnesses' testimony based on their friendship.

During later questioning, Ms. Tyler indicated that she knew Kelli Vincent, a witness in the case, from previous employment at the District Attorney's Office; however, she said this would not result in her giving any more weight to Deputy Vincent's testimony. A challenge for cause was not reurged by defense counsel after this information was elicited. Therefore, we find this assignment of error by Defendant is without merit.

### Assignment Of Error Number 2 - State's Challenge of Juror Justin Richard

Defendant contends the trial court erred in granting the State's challenge of prospective juror Justin Richard because he was "fidgety" and skeptical of police officers. In support, Defendant cites La.Code Crim.P. art. 798, which provides for the only challenges for cause the State can raise, none of which apply to this

situation. We find this scenario falls under La.Code Crim.P. art. 797, which states that either party may challenge a juror on the ground of impartiality.[3]

Mr. Richard explained during his *voir dire* that he was the victim of "quite a few" crimes as a child and thus frequently interacted with police. The interactions were not favorable, and Mr. Richard said he did not feel he could go to police for help, adding, "I just don't have a very high opinion of most police officers. And I am being completely honest." The following exchange ensued:

> MS. HOLMES: Okay. And you believe that even though you don't know anything about this case today, that you would not be able to listen to a law enforcement officer if they took the stand and listened to them with an open ear.

> MR. RICHARD: You know, it would - - it would be different if it was somebody that I knew and I respected, but I don't know any of them.

> MS. HOLMES: Okay. All right. That is fair, Mr. Richard, thank you for answering that way.

Later, these exchanges occurred:

> MS. HOLMES: Let me ask you all, you are gonna hear from several different people during the course of this case. Do you feel like you are all going to be able to listen to the evidence before you kind of hear just one side of the story and be able to take that into account? Or do you feel like if you hear from one witness you are gonna be sort of changed in heart and you are gonna listen to one witness more than the other?

_____

[3] Louisiana Code of Criminal Procedure Article 797 provides the pertinent grounds upon which a juror may be challenged for cause as follows:

> (2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

> (3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;

> (4) The juror will not accept the law as given to him by the court[.]

MR. RICHARD:  The context is key here, you know.

MS. HOLMES:  Uh huh.

MR. RICHARD:  I mean, I don't know how I am gonna act until I actually hear it.

MS. HOLMES:  Okay.  All right.  And Mr. Richard, you have been open about that.

. . . .

MS. HOLMES:  Okay.  And everyone is gonna be able to follow what the Judge tells them to do?  Okay.  You feel like you all are able to do that?  Okay.  Let me ask you this, is there anyone here who feels like they are gonna get distracted if they had to sit here for the next two days or so and listen to a trial?  Mr. Richard.

MR. RICHARD:  I have a lot of nervous energy.

MS. HOLMES:  Nervous energy.

MR. RICHARD:  Uh huh.

MS. HOLMES:  Okay.  Tell me about that.

MR. RICHARD:  I like to walk here and there.

MS. HOLMES:  You like to get up and walk around a lot.

MR. RICHARD:  Yeah.

MS. HOLMES:  Okay.

MR. RICHARD:  I like to get up and do stuff.

MS. HOLMES:  Okay.  So, you feel like that would keep you from sitting here and keeping your mind concentrated on the case?

MR. RICHARD:  Yeah. If I am not like fully invested in something it takes a lot to get me to focus on one thing.

. . . .

MR. VIDRINE:  Okay.  Does anybody agree with law enforcement violating some of your rights?

MR. RICHARD:  I have seen it happen so I mean it does happen.

. . . .

MR. VIDRINE: I know you said that you had some nervous tendencies and everything like that and you kind of like to be able to move around.

MR. RICHARD: Uh huh.

MR. VIDRINE: We do take breaks during the trial.

MR. RICHARD: Yes, but even right now it is kind of hard for me to sit still. I mean I am sure I am aggravating everybody around me.

MR. VIDRINE: Okay. Okay. So, it is like even active right now [be]cause we have only been in here like fifteen minutes, I guess.

MR. RICHARD: Yeah.

The State challenged Mr. Richard for cause noting that he had been a crime victim as a child and did not have a high opinion of law enforcement. The judge expressed concern about him fidgeting and having difficulty sitting. Thus, Mr. Richard was called to a sidebar where he was questioned by the court:

THE COURT: Is it physically difficult for you to sit right now, physically and emotionally difficult for you to sit as a juror?

MR. RICHARD: Uh huh.

THE COURT: You are having trouble with that?

MR. RICHARD: I think I have post-traumatic stress disorder?

THE COURT: Stemming from what, if may I ask?

MR. RICHARD: From abuse and from dealing with police officers. And when I am in situations like this, I get really nervous.

THE COURT: To the point where you are having emotional or physical difficulties?

MR. RICHARD: It is hard to focus on things, it is hard to sit still. And I don't even know what the spectrum is of this is.

13

THE COURT:  We are gonna be here for a couple of days.  We are gonna take breaks like we talked about.  But if it is physically and emotionally difficult for you to be here then I need to, you know, be aware - - be concerned about it.

MR. RICHARD:  Yes.  It is difficult, yes.

THE COURT:  Now, could you do it through if you were required to?

MR. RICHARD:  If I had to?

THE COURT:  Yeah.

MR. RICHARD:  Maybe.

THE COURT:  I see your knees twitching and stuff.  But you are not to the point where you are gonna have like a medical issue or a problem, are you?

MR. RICHARD:  I am diabetic.

THE COURT:  Yeah.  Now, on the issue of police officers, your experience with police officers would that taint you to the point where you don't think you could be fair and impartial, or could you put it aside for this case?

MR. RICHARD:  I know that there are people that get in to it for the right reasons, and people get to it for the wrong reasons, but you don't know what you are getting till it is too late.  And you know - - there - - you know, there was a situation where they should have protected me, they should have protected my family, they should have protected my mom and they didn't.

THE COURT:  So, my question is - - do you remember my question?

MR. RICHARD:  Yes.  But I mean like - - I am telling you this because this colors the way that I view them.  I mean obviously, you know, like I don't know any of the officers like in this room, so I don't know if I can trust them or not.  But, I mean, it is just kind of like I have - - my initial viewing of that is kind of tainted by how those other relationships in the past were.

. . . .

THE COURT:  All right.  So, I guess in a nutshell it would be an issue for you in this case?

MR. RICHARD:  I would be viewing their testimony with a skeptical mindset.

14

Thereafter, the court granted the State's challenge for cause. No objection was lodged by defense counsel.

In *State v. Hayes*, 11-1232, p. 9 (La.App. 4 Cir. 10/24/12), 107 So.3d 668, 675, one of the jurors who the trial court dismissed on a challenge for cause by the state initially said she would need more than "'just the word of the cops.'" She then said, "you can't trust them [the police]." *Id.* She expressed her inability to be fair and impartial if testimony was exclusively from police officers, stating also that she knows they lie. When defense counsel attempted rehabilitation and asked whether she could follow the law and vote to convict, she said, "maybe I'll say yes that I could." *Id.* at 675. The fourth circuit concluded that the trial court did not err in granting the state's challenge for cause based on La.Code Crim.P. art. 797.

In the present case, Mr. Richard informed the court he had previously had bad experiences with police, he felt he had post-traumatic stress disorder from abuse and dealing with police, being around them made him very nervous, his view would be tainted by his past relationships with police, and he would view their testimony with a skeptical mindset. Because Mr. Richard's responses as a whole reflect a lack of impartiality, the trial court did not err in granting the challenge for cause by the State.

*Assignment Of Error Number 3 - Failure To Request Sequestration of Witnesses*

Defense attorneys failed to move for sequestration. In the absence of a motion for sequestration, we find Defendant did not preserve this issue for appellate review. *State v. Cowden,* 04-707 (La.App. 5 Cir. 11/30/04), 889 So.2d 1075, *writ denied*, 04-3201 (La. 4/8/05), 899 So.2d 2.

Other than discussing general precepts on the benefits of sequestering witnesses and general caselaw on ineffective assistance of counsel, Defendant offers

no specific argument as to how his trial was affected by the failure to sequester the witnesses and has not established that he is entitled to relief on the claim of the failure of his counsel to sequester witnesses. Therefore, we find no basis to review Defendant's claim of ineffective assistance of counsel, which is more properly addressed in a claim for post-conviction relief. Accordingly, Defendant's assignment of error three is without merit.

**Assignment Of Error Number 4 - Admission Of The Firearm**

Defendant contends the trial court erred in allowing the admission of a .380 revolver during the testimony of Deputy Kelli Vincent where the State did not establish a foundation or identification of the gun as the gun seized from Defendant. He contends this evidence was the primary cause for his convictions of possession of a firearm by a convicted felon and illegal carrying of a weapon while in possession of CDS, and that he was deprived of a fair trial as a result.

During Officer Vincent's testimony, she identified the .380 caliber pistol, serial number DB380, as one of the items that she placed in custody. Defense counsel objected to the admission of the gun in evidence, arguing:

> My objection Judge, is that all they have is a model number called D380 to identify that weapon. And I am sure that the manufacturer made way more than one model D380. It is a common caliber, a .380 pistol. They don't have the serial number of the actual gun in their report of evidence. She just has it marked on the tag that she read from the gun. There is no way to identify that the gun as the gun that was allegedly used in a crime.

The State responded:

> Your Honor, I would note that this is the only item that was seized in connection with this particular complaint involving a weapon. It is the only weapon that was taken in at the time of the actual arrest. So[,] it is the same item that was placed into custody. It hasn't broken any chain of custody. So, it still is the item that was secured at the time of his arrest, up until this time.

The judge ruled:

> All right. Well, the Court considers the objection on foundation grounds. If you will establish more of a foundation, then if there is an objection we will approach at that time and come back.

Officer Vincent then testified that she received the gun and other items in her drop box on the morning of December 18th at approximately 8:30 or 9:00, which was the next business day after they were dropped off. The drop box is locked, and she is the only one in the department with a key. From the drop box, the items were placed in the custody room. She marked each item after they were brought to the custody room. She placed the gun into the bag it was in at the time of trial. No one else had access to the gun during the time it was in custody, where it remained until trial.

Defense counsel objected again on the previous basis, that there was no serial number of the gun on the report of evidence. The court denied the objection finding a sufficient chain of custody was established for the introduction of the gun into evidence.

On cross-examination, Officer Vincent testified that the gun was tagged with its serial number when it was dropped into the drop box at 1:05 a.m., the same morning it was later retrieved by Officer Vincent. She explained that the evidence is dropped off by whomever collects it, and both the chain of custody form and the classification form are attached.

Additionally, Detective Garrett Beeson identified the gun as the one he took from Defendant, which he had found in Defendant's back left pocket.[4] Once the

---

[4] This court notes the gun was inadvertently referred to as Item Number 1 rather than Item Number 7. State's Exhibit No. 1 was a rights form, and the only gun introduced in evidence was the one identified as State's Exhibit No. 7.

items of evidence were seized, they were put into a bag and Lieutenant Gushlaw took them to the office. Once at the office, the evidence is separated, packaged, and a description log and chain of custody form are completed before it is placed into the locked drop box. This procedure was followed in this case according to the testimony of Detective Beeson.

We find the trial court did not err in allowing the admission of the gun as it was identified by Detective Beeson as the gun retrieved from Defendant and it was bagged, logged, and placed in a locked drop box where it was retrieved by Deputy Kelli Vincent a short time later. Therefore, we find this claim by Defendant has no merit.

### Assignment Of Error Number 5 - Admission Of Thirteen Plastic Bags

Defendant claims the trial court erred in denying his objection to the admission of thirteen plastic bags containing residue because they were not tested and there was no evidence that they had been used to package narcotics. According to Defendant, their improper admission was prejudicial because they gave the inference that they were used to distribute drugs. Defendant contends the evidence should have been excluded under the provisions of La.Code Evid. art. 403, which provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time."

Detective Beeson testified that during the pat down of Defendant, they located a pistol, crystal meth, pills, a scale, a powder substance, and some plastic baggies. When asked if he found any paraphernalia indicating Defendant was selling drugs, Detective Beeson said "[j]ust the baggies and the scale." When the thirteen plastic baggies with residue were introduced in evidence during Deputy Vincent's

testimony, she explained that they were not sent off to the lab for testing. When asked why, she stated, "I was instructed that they [do not] test residue. . . [s]o it wouldn't be of any benefit to send the little baggies, [be]cause they wouldn't be tested."[5] Defense counsel objected, and a sidebar conference was held:

> MR. VIDRINE: Yes, sir. I am gonna object because they never had the bags tested. They said they don't test residue. There is no way that I think that they can prove 1, that there is residue, or 2, even if it is residue, residue of what, cornstarch, sugar. I don't know. They can't offer any other evidence to prove that it was residue of drugs, Judge.

> THE COURT: We can agree that there is no result from the crime lab showing what the residue may be.

> MS. HOLMES: Right.

> THE COURT: The Court does find that there has been a proper foundation laid. And that baggies are relevant for the possible argument showing intent to distribute.

The evidence was admitted over Defendant's objection. Factors to be considered in determining whether there is sufficient evidence to prove the intent to distribute a controlled dangerous substance include:

> (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as ***baggies* or scales, evidencing an intent to distribute.**

*State v. Hearold*, 603 So.2d 731, 735 (La.1992) (emphasis added.)

We find that the thirteen baggies were admissible to show intent to distribute.

As for the reference to the residue contained within the bags, Defendant points to no

---

[5] It appears that the court reporter inadvertently failed to initially include the words "do not" because Deputy Vincent then indicated the bags could not be tested, and the objection lodged by the defense indicates that she said the lab does not test residue.

testimony indicating that this residue was an illegal substance. Additionally, the jury heard Deputy Vincent's testimony that the bags were not sent to the lab because they could not be tested. Therefore, the probative value of this evidence was not outweighed by its prejudicial effect, and this assignment of error has no merit.

***Assignment Of Error Number 6 - Failure To Call Witnesses***

Defendant claims the trial court erred in denying the defense objection to the State's reference during closing argument that the defense failed to call witnesses, citing no jurisprudential nor statutory authority. Specifically, he refers to the following exchange:

> There is hard proof of possession of the drugs. What more proof do you need than the pictures that I showed to you, than the drugs themselves, than the drugs that were there as well as the weapon? That is the proof that you need to remember and look back to, that that was found on, not Mr. Smith, not another person, but on Mr. Simien who is seated at that table. *And the complaint of excessive force, well, if these were witnesses who were a party to this particular offense they would have been here today, they would have been here to testify.* But the truth is, is that, as you heard from Mr. Beeson - -
>
> . . . .
>
> (SIDEBAR CONFERENCE)
>
> MR. VIDRINE:  My objection is, obviously, that she can't comment on our defense whether or not somebody is here to testify or not. She cannot comment on that. They are to take - - the jury is to take no weight as to how I presented my case and how Mr. Simien presented his case. She can't get up there and say, well, you know if they were good witnesses or whatever like they would have been called to testify.
>
> THE COURT:  What was the comment that was made?
>
> MR. VIDRINE:  The comment was that, if these were good witnesses or whatever they would have been called to testify.
>
> MR. RICHARDSON:  That implies that the defense needed to call them.
>
> MS. HOLMES:  Right.

20

THE COURT:  Huh?

MS. HOLMES:  I don't know that that is an implication that we are saying they needed to call upon them.

THE COURT:  All right.  Well, the State cannot comment on the person claiming their right to remain silent and not testify, or presenting a defense.

MR. VIDRINE:  Yes, sir.

THE COURT:  The defendant need not present a defense as he is presumed innocent.  Okay.

MR. RICHARDSON:  At the same time, Judge, I would say the door has been opened because the defense talks about, oh where were these witnesses.  They have compulsory process just like we do, and they chose not to use it.

THE COURT:  All right.  Ms. Holmes will continue and go in a different direction, I'm sure

MS. HOLMES:  Thank you.

(Emphasis added.)

Although the trial judge acknowledged the issue, he did not instruct the jury to disregard the prosecutor's comment.  However, prior to the contested comment by the State, defense counsel, in his closing argument stated:

> In this case we have here the cop, in his testimony, Detective Beeson, in his testimony said that no witnesses were interviewed, even though there were multiple people present at the home during this incident. Second, the complaint that we talked about that Detective Hebert brought up, that is where John complained about excessive force, about you know, being called a racist term while the cops were trying to arrest him.  That complaint didn't go anywhere because they didn't want it to go anywhere.  At minimum, again, these two adult witness[es] who were at the scene should have been questioned and asked what they saw, not just well this is what he said and we are not gonna believe him and we are not gonna do anything else.

The defense alleged that police used excessive force, and the comment at issue was the prosecutor's response to the allegation.  Louisiana Code of Criminal

21

Procedure Article 774 confines argument to "evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case."

In *State v. Bolden*, 95-749 (La.App. 3 Cir. 4/17/96), 680 So.2d 6, *writ denied*, 96-1272 (La. 11/22/96), 683 So.2d 286, defense counsel questioned during closing argument why the state did not call a certain witness to testify. The prosecutor responded that the defense has the same subpoena power as the state, and that if significant, the defense could have subpoenaed this witness as well.

On appeal, the defendant complained that the state's comment amounted to an impermissible comment on his failure to present a defense. *Id.* This court found that the remark was merely an answer to defendant's argument, and there was no merit to the defendant's claim. *Id.*

Similarly, in the present case, we find that the prosecutor's comment was proper as she was simply answering an issue raised in defense counsel's closing argument. Thus, this assignment of error has no merit.

## CONCLUSION

Accordingly, based on the foregoing, Defendant's convictions and sentences are hereby affirmed.

**CONVICTIONS AND SENTENCES AFFIRMED.**